# Exhibit 4

# Exhibit 2

**DECLARATION OF GAVIN FERGUSON**

United States v. All Assets Held at Bank Julius Baer & Co. *et al.*, 04-00798 (D.D.C.)

**Qualifications**

I am the Managing Partner of the Guernsey office of Appleby, an offshore legal services provider with ten offices around the world. I have been a lawyer for approximately fifteen years and I specialize in the law of trusts. I have practiced law in Guernsey since 2005 and before I worked for approximately four years as a Solicitor at the law office Wedlake Bell in London. I was admitted as a Solicitor of England and Wales in 2003 and as an advocate of the Royal Court of Guernsey in 2007.

I hold various fiduciary positions, including Director of a Guernsey protector company and protector of Guernsey, Jersey, and English law trusts. I have been a member of the Society of Trust & Estate Practitioners ("STEP") since 2006. I am a frequent contributor to various legal publications, including the STEP Journal. I enclose as **Exhibit 1** my curriculum vitae which includes my academic qualifications and relevant professional background.

**Summary**

I am aware of the proceedings in the United States in which the United States Government is seeking the forfeiture of the assets held in a Guernsey law trust known as the Balford Trust (**Trust**). The United States Government asserts that the Trust property is forfeitable because it is connected to the criminal activities of Mr Pavel Lazarenko (**Mr P Lazarenko**). Mr P Lazarenko is the Settlor and Protector of the Trust.

I have been instructed to give my opinion as to the legal nature of the Trust and as to what interest and control (if any) Mr P Lazarenko has with respect of the Trust and the Trust property as a matter of Guernsey law. For the purposes of giving this opinion I have inspected the documents listed in **Exhibit 2**.

In summary, my opinion is that Mr P Lazarenko cannot benefit from the Trust or the Trust property because he is not a beneficiary. Mr P Lazarenko also does not have a residual or reversionary interest in the Trust property, as Sub-Clauses 3(d) and (e) of the Declaration of

Trust explicitly provide that any Trust property not distributed to the Beneficiaries shall be distributed to such charities as the Trustees determine in their discretion or, failing such determination, to the United Nations Educational Scientific and Cultural Organization ("UNESCO"). Although as Protector Mr P Lazarenko has certain consensual or negative powers over certain decisions of the Trustees, his role as the Protector of the Trust does not give him an interest in the Trust property under Guernsey law. In addition, as Protector, Mr P Lazarenko does not have the legal authority to revoke the Trust or to direct the Trustees (the legal owners of the Trust) to take any action in relation to the Trust or the Trust property.

**Introduction to Guernsey Law Trusts**

Guernsey has recognised trusts of personal property since the nineteenth century and in 1989 Guernsey enacted its first statutory trust law entitled "the Trusts (Guernsey) Law, 1989" which was amended pursuant to "the Trusts (Amendment) (Guernsey) Law, 1990". On 17 March 2008, "the Trusts (Guernsey) law, 2007" (**2007 Law**) (*a copy of which is at **Exhibit 3***) came into force, replacing, as opposed to amending, the Trusts (Guernsey) Law, 1989 as amended.

The 2007 Law is divided into 5 parts: Part I contains preliminary provisions, Part II contains provisions applicable only to Guernsey trusts, Part III contains provisions applicable only to foreign trusts, Part IV contains provisions of general application, and Part V contains supplemental provisions.

Application of the 2007 Law to trusts created prior to the 2007 Law coming into force

As per Section 78 of the 2007 Law, the 2007 Law applies to trusts created before or after the commencement of the 2007 Law except where provision to the contrary is made i.e. except where a section of the 2007 Law expressly states otherwise.

Application of Guernsey law

Under Section 14(1) of the 2007 Law, Guernsey law will, subject to the terms of a trust, apply to all questions arising in relation to a Guernsey trust or any disposition of property to or upon such a trust, including (without limitation) questions as to –

*"(a) the capacity of the settlor,*

*(b) the validity, interpretation or effect of the trust or disposition or any variation or termination thereof,*

*(c) the administration of the trust, whether it is conducted in Guernsey or elsewhere, including (without limitation) questions as to the functions, appointment and removal of trustees and enforcers,*

*(d) the existence and extent of any functions in respect of the trust, including (without limitation) powers of variation, revocation and appointment, and the validity of the exercise of any such function,*

*(e) the distribution of the trust property,"*

Existence of a trust and trust parties

Section 1 of the 2007 Law defines the existence of a trust to be:-

> "*A trust exists if a person (a "**trustee**") holds or has vested in him, or is deemed to hold or have vested in him, property [Section 7 of the 2007 Law confirming "Any property may be held on trust"] which does not form or which has ceased to form part of his own estate –*
>
> *(a) for the benefit of another person (a "**beneficiary**"), whether or not yet ascertained or in existence, and / or*
>
> *(b) for any purpose, other than a purpose for the benefit only of the trustee."*

Thus the parties to a trust are:-

(1) The settlor

The settlor of a trust is the "*person who directly or indirectly provides trust property or makes a testamentary disposition on trust or to a trust*" (Section 80 of the 2007 Law). The settlor may be, but does not have to be, named in the trust instrument.

The 2007 Law (Section 15) provides expressly for the reservation or grant by the settlor (whether to the settlor or to any other person) of numerous powers and interests without invalidating the trust or constituting the holder of the power or interest a trustee.

(2) The trustee

A Guernsey trust must have two trustees unless only one trustee was originally appointed, or there is a corporate trustee resident in Guernsey (i.e. has its registered office in Guernsey), or the terms of the trust provide otherwise (Section 17 of the 2007 Law).

Not surprisingly, the 2007 Law contains extensive provisions relating to the powers, duties and liability of trustees; supplementing and in some cases overreaching the terms within a trust instrument.

(3) The beneficiaries

Beneficiaries must be identifiable by name or ascertainable by reference to a class or relationship to another person whether living at the date of the creation of the trust or the vesting of the gift. Beneficiaries may be added or excluded if the trust terms so permit, and may include a trustee or settlor (Section 8 of the 2007 Law).

(4) Optionally, a protector

The term 'protector' is not used in the 2007 Law, but falls within the definition of "trust official" at Section 80 of the 2007 Law being "*a person having a function or holding an office in respect of the trust other than a settlor, trustee, enforcer or beneficiary*".

<u>Duration of trusts</u>

There is no rule against perpetuities or remoteness of vesting in Guernsey law and trusts can last indefinitely under Guernsey law (Section 16(1)(a) and (b) of the 2007 Law). However, non-charitable trusts created before the commencement of the 2007 Law shall last a maximum of 100 years from their creation, which follows Section 12 of the Trusts (Guernsey) Law, 1989 as amended (Section 16(2) of the 2007 Law).

Types of Trust

There are numerous forms of trust including, as is relevant for this opinion:-

- Revocable or Irrevocable - A Guernsey trust may be revocable or irrevocable (section 50 of the 2007 Law)

- Discretionary – A discretionary trust, probably the most widely used type of trust, is a trust where the trustee has complete discretion as to which of the beneficiaries should benefit, when and to what extent. The trustees have obligations as to how they exercise their discretion and must do so only for the benefit of the beneficiaries. The beneficiaries have no right to either income or capital of the trust, but merely a hope that the trustees will exercise their discretion for their benefit. The settlor can give guidance as to how he desires the trustees to exercise their discretion through a 'letter of wishes', and the trustees should take it into consideration, but it does not fetter the trustees' discretion.

**Opinion**

Governing law of the Trust

The Trust is governed by Guernsey law (clause 2 of the Declaration of Trust). Thus, the 2007 Law applies to all questions arising in relation to the Trust and dispositions of property to or upon the Trust (Sections 78 and 83 of the 2007 Law).

Legal nature of the Trust as a matter of Guernsey law

Provided Mr P Lazarenko was the owner of the initial trust property (US$10) and was not prevented from disposing of it in favour of the Original Trustees, the Trust was validly created on 7 August 1997 being the date upon which the Declaration of Trust was executed by the Trustees, being the sole party thereto, who on that date held US$10 on trust for the Beneficiaries.

The Trust is discretionary, meaning the Trustees have complete discretion as to which of the Beneficiaries should benefit, when and to what extent (for example, clauses 3(a), 3(c), 3(d), 4, 7, 8 of the Declaration of Trust). The Declaration of Trust states that "*every discretion vested in the Trustees shall be absolute and uncontrolled and every power vested in them shall be exercisable*

*at their absolute and uncontrolled discretion and the Trustees shall have the same discretion in deciding whether or not to exercise any such power.*" (clause 11(b) of the Declaration of Trust). The Beneficiaries have no proprietary right to the Trust property, only a right to be considered by the Trustees to benefit (clause 3 of the Declaration of Trust).

The Trust is also irrevocable (clause 27 of the Declaration of Trust). A power of revocation in respect of a whole settlement is possible under Guernsey Law but can only be reserved by the settlor and must be done at the creation of the settlement. However, where a power of revocation is not reserved and in cases, such as with the Trust, where the trust is expressly irrevocable, it is not possible for the settlor or anyone else to revoke a trust. Therefore, neither Mr P Lazarenko nor anyone else can revoke the Trust.

What interest (if any) does Mr P Lazarenko have in respect of the Trust and the Trust property as a matter of Guernsey law?

Mr P Lazarenko has no legal or equitable interest in the Trust or the Trust property under Guernsey law. All funds that Mr P Lazarenko as Settlor added to the Trust (detailed in paragraph 3 of Charles A Tonna's declaration at Docket No 376-1 Exhibit O) will have ceased to form part of his estate and are held by the Trustees, Samante Limited, for the benefit of the Beneficiaries on the terms of the Trust. The Trustees are the legal owners of the Trust property and have legal and fiduciary duties to use the Trust property for the benefit of the Beneficiaries as they see fit. Mr P Lazarenko is not identified in the Declaration of Trust as a trustee and as such is not the owner of the Trust property.

Mr P Lazarenko is not the beneficial owner of the Trust funds under Guernsey law. Notwithstanding Mr P Lazarenko was not a party to the Declaration of Trust, he is the Settlor by virtue of having settled funds into the Trust. The form 'Establishment of Beneficial Owner's Identity' (at Exhibit C to Docket No. 376-1 Exhibit O) refers to Mr P Lazarenko as the person who provided the funds settled into the Trust, which were deposited in Samante Limited's account 0251-914499-4. It does not mean Mr P Lazarenko is the current owner of the funds in the Trust. As stated above, these funds are no longer part of Mr P Lazarenko's estate and the legal owners of the funds are the Trustees, which hold the Trust funds for the benefit of the Beneficiaries as per the terms of the Declaration of Trust.

The Beneficiaries of the Trust are identifiable in accordance with Section 8 of the 2007 Law and are, as per clause 1(a) and the Second Schedule to the Declaration of Trust, Alexandre Lazarenko, Tamara Lazarenko, Lecia Lazarenko and Ekaterina Lazarenko; who I understand to be Mr P Lazarenko's son, former wife and two daughters. Mr P Lazarenko is not within the class of Beneficiaries and as such is not entitled to benefit from the Trust.

The Trustees have power by deed (defined at clause 1(d) of the Declaration of Trust) and subject to the consent of the Protector, to add and remove Beneficiaries (clauses 8 and 7 respectively of the Declaration of Trust). Notwithstanding Mr P Lazarenko is not a Beneficiary of the Trust, he is not an Excluded Person (as defined in clause 1(e) of the Declaration of Trust), and as such he could be added as a Beneficiary if the Trustees (with Mr P Lazarenko's consent as protector) considered such addition to be in the best interests of the existing Beneficiaries. However, the possibility that Mr P Lazarenko could be named a Beneficiary does not give him any interest in the Trust property as a matter of Guernsey law, just as the possibility that any other person could be named a Beneficiary would not give that person an interest in the Trust property.

The Trustees should take into consideration Mr P Lazarenko's letters of wishes, but these letters do not bind the Trustees. Mr P Lazarenko has stated in a letter of wishes dated 6 February 1998 that he wishes the Trustees to consider the Trust assets "*as being available to meet any contingent requirements of: Mr. Lazarenko Pavlo, Mrs Lazarenko Tamara, Mr Lazarenko Alexandre, Ms Lazarenko Kateryna* [I assume Ekaterina], *Ms Lazarenko Lesya* [I assume Lecia]". This does not make Mr P Lazarenko a Beneficiary. Mr P Lazarenko cannot become a Beneficiary unless the Trustees add him as a Beneficiary following the procedures set forth in clause's 8(b) and 19 of the Declaration of Trust, of which I have seen no evidence. The aforementioned letter of wishes then goes on to say that Mr P Lazarenko "*would like the trustees to hold the trust funds as to income and capital for: Lazarenko Tamara 25%, Lazarenko Kateryna* [I assume Ekaterina] *25%, Lazarenko Alexandre 25%, Lazarenko Lesya* [I assume Lecia] *25%*". This would be in accordance with the class of Beneficiaries as per the Declaration of Trust, but somewhat contradicts his wish in the foregoing sentence. The Trustees cannot distribute Trust funds to Mr P Lazarenko because he is not a Beneficiary of the Trust.

Mr P Lazarenko claims to have a "residual and reversionary" interest in the Trust property (Document 29 at p 5; Claimant Lazarenko's Third Supplemental Response p 3). Such a claim has no support under Guernsey law. The Declaration of Trust (clause 3 (d)) establishes that the Trustees shall distribute any Trust property not distributed to the Beneficiaries to *"such charities as the Trustees shall in their absolute discretion determine"*. In addition, any Trust property not distributed to the Beneficiaries or to the charities determined by the Trustees shall go to the *"United Nations Educational Scientific and Cultural Organisation absolutely"* (clause 3(e) of the Declaration of Trust). Mr P Lazarenko's consent as Protector is not required for this distribution to UNESCO and as such he cannot veto this distribution (Fourth Schedule of the Declaration of Trust)). Because the Declaration of Trust includes mandatory provisions directing the Trustees how to dispose of any Trust property not distributed to the Beneficiaries, I do not believe that Mr P Lazarenko has retained a residual or reversionary interest in the Trust property under Guernsey law. Under Guernsey law, the Trust property must be distributed in accordance with the Declaration of Trust (Sections 22 and 53(1) of the 2007 Law).

I note that Mr P Lazarenko also argues that he is the owner of the Trust property based on his contention that the Trust is a 'grantor' trust under the tax laws of the United States (Document 406-2 at p 22/38). Notwithstanding whatever status the Trust may or may not have under US tax laws and any tax liability Mr P Lazarenko may or may not have under those laws, he does not have an interest in the Trust property under Guernsey law because he is not a Beneficiary. As discussed above, the 2007 Law controls this issue and US tax law is not applicable. In addition, the grantor trust concept does not exist under Guernsey law.

Mr P Lazarenko's status as Protector of the Trust does not give him an interest in the Trust property under Guernsey law. Under Guernsey law, only beneficiaries have a right to be considered to benefit from the assets of a trust (Sections 1, 10 and 80 of the 2007 Law). Neither a trustee (Section 72 of the 2007 Law) nor any other trust official has an interest in the assets of a trust unless they are also beneficiaries. In addition, although the Trustees must obtain Mr P Lazarenko's consent as Protector in exercising some of their powers, Mr P Lazarenko is not deemed a trustee by virtue of providing or refusing to provide this consent (Section 32 of the 2007 Law).

What control (if any) does Mr P Lazarenko have in respect of the Trust and the Trust property?

Mr P Lazarenko is the Settlor of the Trust but as the Trust is irrevocable (clause 27 of the Declaration of Trust) he cannot revoke it.

As Protector, Mr P Lazarenko does not have any 'positive' powers under the terms of the Declaration of Trust, other than the power to appoint a successor protector or to temporarily delegate his functions to another person (clauses 20(c) and (g) of the Declaration of Trust). As the Protector, Mr P Lazarenko does not have any power to control the 'internal' management of the Trust, for example to appoint and remove Trustees, or to control or influence the investment and management of the Trust property. The Protector does not have any power to dispose of the Trust property.

As the Protector, Mr P Lazarenko only has certain 'consensual' or 'negative' powers. As such, the Trustees must seek his consent when they exercise some of their powers (clause 19(a) and the Fifth Schedule to the Declaration of Trust). The powers of the Trustees which require the consent of the Protector are, as per the Fourth Schedule to the Declaration of Trust:

- To bring forward the Trust Period i.e. to end the Trust (clause 1(m)(ii) of the Declaration of Trust);
- To change the proper law of the trust (clause 2(b) of the Declaration of Trust);
- To pay income to the Beneficiaries (clause 3(a) of the Declaration of Trust);
- To distribute the capital and income of the Trust property to the Beneficiaries (and in default of which, charities) at the end of the Trust Period (clauses 3(c) and 3(d) of the Declaration of Trust);
- To appoint and advance capital of the Trust property to Beneficiaries (clause 4 of the Declaration of Trust);
- To exclude Beneficiaries (clause 7 of the Declaration of Trust);
- To add Beneficiaries (clause 8 of the Declaration of Trust);

- To appoint new or additional trustees (clause 15(a) of the Declaration of Trust);
- To vary the trust power and provisions contained in the Declaration of Trust (clause 24 of the Declaration of Trust);

**(together the Negative Protector Powers).**

These Negative Protector Powers are all permitted under the 2007 Law.

The Negative Protector Powers mean that the Trustees must seek the consent of the Protector in exercising the powers listed above. Such consent must be by written instrument and be prior or simultaneous to the exercise by the Trustees of their above powers, provided that if the Trustees have not received the written consent or refusal of the Protector within 30 days of the Trustees requesting such consent, the Protector shall be deemed to have consented thereto (clause 19 of the Declaration of Trust). However, if the Trustees determine that Mr P Lazarenko is unreasonably withholding his consent to certain of their actions or that Mr P Lazarenko's actions are not in the best interests of the Beneficiaries, they have a fiduciary duty to consider steps to remove him from office as Protector or seek other appropriate relief from Guernsey Courts. The Negative Protector Powers do not fetter the Trustee's discretion in exercising their powers. The Trustees retain discretion to, for example, determine whether any distribution of Trust property will be made to the Beneficiaries and whether to add or exclude Beneficiaries. They have "*discretion in deciding whether or not to exercise any*" of their powers (clause 11(b) of the Declaration of Trust). Mr P Lazarenko, either in his capacity as Settlor or Protector, cannot direct or force the Trustees to exercise any of their powers. As such, the Trust is discretionary despite the Negative Protector Powers.

As stated above, Mr P Lazarenko does not have an interest in the Trust property by virtue of having the Negative Protector Powers. These powers only give him a limited role in the administration of the Trust. The Trustees remain the legal owners of the Trust property, with exclusive power to dispose of the Trust property in accordance with the Declaration of Trust. The Beneficiaries remain the only persons who may benefit from the Trust property.

The reason for the creation of the Trust was '*confidentiality*' and '*protection of assets*' (page 7/10 of Exhibit D Acceptance Questionnaire at Docket No. 376-1 Exhibit O). By not retaining

an interest in the Trust property (i.e. by being a beneficiary) or the power to dispose of the Trust property or revoke the Trust, Mr P Lazarenko divested himself of the Trust property with the potential to shield the Trust property from any future creditors.

Disclosure of bank and trust documents

I have reviewed a declaration by one of Mr P Lazarenko's attorneys in the United States where this attorney alleges that attorneys for the Trustees refused to provide him records regarding the Trust given "*Guernsey secrecy law*" and "*additional secrecy laws*" given that "*the case is subject to a confiscation order in Guernsey*." (paragraph 2.k of Declaration of Jed M. Silversmith (Updated September 24, 2015)). However, Guernsey does not have any secrecy laws. Banks and trustees of Guernsey law trusts have a duty of confidentiality, but this duty would not prevent the disclosure of bank and trust records in all circumstances. In particular, banks and trustees may disclose relevant records (1) where disclosure is under compulsion of law; (2) where there is a duty to the public to disclose; (3) where the interests of the bank or the trustee require disclosure; and (4) where the disclosure is made by the express or implied consent of the customer (In Re B, Court of Appeal Civil Division 11 July 2012 Judgment 35/2012, p. 12 (citing Tournier v. National Provincial and Union Bank of England [1924] 1KB 46 (attached as **Exhibit 4**)). The Restraint Order issued in July 2004 by the Royal Court of Guernsey makes no mention of disclosure of Trust documents and as such does not impose additional confidentiality requirements under Guernsey law (document no. 533-3).

**Conclusion**

Mr P Lazarenko is the Settlor of the irrevocable Trust but cannot revoke the Trust. Mr P Lazarenko has certain consensual or negative powers in his capacity as Protector of the Trust, meaning the Trustees must seek his consent in exercising some of their powers, but he has no power to dispose of the Trust property. Mr P Lazarenko's role as Protector does not give him an interest in the Trust property under Guernsey law.

The Trustees are the legal owners of the Trust property and have a legal and fiduciary duty to use the Trust property exclusively for the benefit of the Beneficiaries as they see fit and in accordance with the terms of the Declaration of Trust. Mr P Lazarenko is not a Beneficiary of the Trust and as such does not have a right to be considered by the Trustees to benefit from the Trust property. He also does not have a residual or reversionary interest in the Trust property because the Declaration of Trust specifically provides that any property not distributed to the Beneficiaries must go to charities the Trustees in their discretion (and with the Protector's consent) determine or failing such determination to UNESCO. Therefore, Mr P Lazarenko has no interest in the Trust property as a matter of Guernsey law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

20 January 2016

[signature] Fergus

Gavin Ferguson

St Peter Port
Guernsey

Before me,

[signature]

M.R. CARIOU
NOTARY PUBLIC
Bordeaux Court
Les Echelons
Guernsey
Channel Islands



# Exhibit 1

**CURRICULUM VITAE**

**Gavin Scott Ferguson**
Regency Court
Glategny Esplanade
St. Peter Port
GY1 1WW
Guernsey
Tel: +44 1481 755600
E-Mail: gferguson@applebyglobal.com

**PROFILE**

Gavin is the Office Managing Partner and also a founding partner of the Guernsey office of Appleby Advocates (part of the Appleby Global firm of lawyers). He is the Head of the Private Client and Trust department of Appleby in Guernsey. He has practiced law since 2001 and is a recognized practitioner in Guernsey trust law. He has advised trustees and beneficiaries of trusts in Guernsey regarding various contentious and non-contentious matters. In addition to Gavin's extensive managerial and private client & trust experience, he acts in a personal fiduciary capacity (having a Guernsey personal fiduciary license) for a number of corporate and charitable structures.

Gavin schooled in Guernsey and then moved to the UK for University. Before commencing his legal career, Gavin worked as a stockbroker for Quilter Morgan Stanley. He then joined Wedlake Bell in London where he trained and later practised as an English solicitor. Gavin returned to Guernsey in 2005 to join Ozannes (now Mourant Ozannes) where he worked for 5 years.

**FIDUCIARY POSITIONS**

Gavin holds a number of fiduciary positions including acting as:-

- Director of a Guernsey Protector Company
- Council Member for a Jersey Private Foundation
- Alternate Council Member for a Jersey Foundation
- Protector of a Jersey Law Trust
- Protector of a Guernsey Law Trust
- Protector of a Guernsey Charitable Trust
- Protector of an English Law Trust
- Enforcer of a Guernsey Law Trust
- Consultant to one of Guernsey's largest independent trust companies
- Director of St John Ambulance LBG
- Guardian of Guernsey charity for male cancer: "Male Uprising in Guernsey Foundation"

**CURRICULUM VITAE**

## CAREER HISTORY

**2010 – Date** **Appleby Guernsey -** Managing Partner

- A Founding Partner in the establishment of Appleby Guernsey
- Head of the Private Client and Trust department of Appleby Guernsey

**2005 – 2010** **Mourant Ozannes Guernsey -** Advocate

- An advocate and principal in the Private Client and Trust department of Mourant Ozannes, having helped to create the department in 2005. Also a member of the firm's Business development management committee.

**2001 – 2005** **Wedlake Bell, London -** Solicitor

- A solicitor in the highly regarded private client department of Wedlake Bell, London

**2001** **Blake Dawson Waldron Lawyers, Australia -** Paralegal

**1998 – 1999** **Citi Morgan Stanley, Guernsey -** Dealer/Trainee Portfolio Manager

## ACCOLADES

- 'Citywealth Leader 2014' and recognised in the 2011, 2012 and 2013 *Citywealth 'Leaders List'*.
- Named on the *Legal 500 UK* 2013 elite 'Leading Lawyers' and 'recommended' list.
- Named as a 'Leader in his Field' by *Chambers UK* 2015, rated for his 'in-depth knowledge' and 'sound technical skills.'
- Named as one of Eprivateclient's 50 Most Influential for 2015.
- Named as one of the Top 35 Private Client Practitioners under 35 by Private Client Practitioner magazine in 2010 and 2011.

## ARTICLES/SEMINARS

- Conceptualised and developed the concept of an accredited worldwide foundation course – STEP and CLT will be running the course in mid-2013 and Gavin is a co-author and tutor (alongside Professor J. Goldsworth and Filippo Noseda, Partner, Withers.)
- A frequent contributor to various publications, including the STEP Journal and 4th Edition of International Succession edited by Louis Garb and John Wood
- A regular presenter at conferences & seminars (local and international).

## EDUCATION

1999 – 2000 College of Law, London - Legal Practice Course

1998 – 1999 Kingston University - MA in Legal Studies

1997 – 1998 Kingston University - Post Graduate Diploma in Law

1994 -1997 University of Teesside - BA(Hons) in Business Economics

1983 – 1994 Elizabeth College, Guernsey - A Levels in English Literature, Classics, Economics and Politics

**OTHER QUALIFICATIONS**

2011 Personal Fiduciary License granted by the Guernsey Financial Services Commission

2009 Islamic Finance Qualification

2007 Guernsey Bar Examinations

2006 Certificat d'etudes juridiques francaises et normandes

2006 Society of Trust & Estate Practitioners

2003 Admitted as a Solicitor in England & Wales

1998 SFA Securities Representative Exam

**PROFESSIONAL MEMBERSHIPS**

- Chartered Member of the Securities Institute
- Sub-committee Member of the Guernsey Association of Trustees
- Member of the International Tax Planning Association
- Member of the Guernsey International Legal Association
- Member of the Society of Trust and Estate Practitioners

# Exhibit 2

**DECLARATION OF GAVIN FERGUSON**

United States v. All Assets Held at Bank Julius Baer & Co. *et al.*, 04-00798 (D.D.C.)

**<u>Documents inspected provided by U.S. Department of Justice</u>**

- Document 376-1: Exhibit O, Declaration of Charles Tonna and Exhibits
- Document 29: Lazarenko Verified Claim
- Document 406-2: Lazarenko Reply, Motion to Amended Answer, pp. 12-21
- GSY003418: Establishment of Beneficial Owner's Identity
- GSY004360-376: Credit Suisse Trust in Guernsey, Acceptance procedures
- GSY004377-4384: Section A, Acceptance Questionnaire
- GSY004564-594: Declaration of Trust
- GSY005371-5381: Credit Suisse Trust in Guernsey, Acceptance Procedures
- Document 20: First Amended Complaint
- Document 533-3: Restraint Order
- Document 393: Protective Order
- Claimant Lazarenko's Third Supplemental Response to Plaintiff's First Set of Interrogatories, pp. 1-4.
- Declaration of Jed M. Silversmith (Updated September 24, 2015).
- AP Group Global, *Confidentiality But Not Secrecy – The Guernsey Way*

# Exhibit 3

*Consolidated text*

# PROJET DE LOI

ENTITLED

## The Trusts (Guernsey) Law, 2007 *

*[CONSOLIDATED TEXT]*

***NOTE***

*This consolidated version of the enactment incorporates all amendments listed in the footnote below. However, while it is believed to be accurate and up to date, it is not authoritative and has no legal effect, having been prepared in-house for the assistance of the Law Officers. No warranty is given that the text is free of errors and omissions, and no liability is accepted for any loss arising from its use. The authoritative text of the enactment and of the amending instruments may be obtained from Her Majesty's Greffier, Royal Court House, Guernsey, GY1 2PB.*

©States of Guernsey

* No. III of 2008. See also the Deputy Bailiff (Guernsey) Law, 1969 (Ordres en Conseil Vol. XXII, p. 122); the Law Reform (Age of Majority and Guardianship of Minors) (Guernsey) Law, 1978 (Ordres en Conseil Vol. XXVI, p. 264).

# PROJET DE LOI

ENTITLED

## The Trusts (Guernsey) Law, 2007

ARRANGEMENT OF SECTIONS

PART I
PRELIMINARY

1. Existence of a trust.
2. Validity of trusts.
3. Proper law of trust.
4. Jurisdiction of court.

PART II
PROVISIONS APPLICABLE ONLY TO GUERNSEY TRUSTS

5. Application of Part II.

*Creation, validity and duration of Guernsey trusts*

6. Creation of a trust.
7. Property which may be held on trust.
8. Beneficiaries of a trust.
9. Disclaimer of beneficial interest.
10. Nature of beneficial interest.
11. Validity and enforceability of trust.
12. Trusts for non-charitable purposes; and enforcers.
13. Duty of enforcer not to profit from his office.
14. Application of Guernsey law to questions of validity.
15. Reservation or grant of certain powers does not invalidate trust.
16. Duration of trust, etc.

*Appointment, retirement and discharge of trustees*

17. Number of trustees.
18. Appointment of new or additional trustees.
19. No renunciation after acceptance.
20. Resignation or removal of trustees.
21. Position of continuing trustees on reduction in number of trustees.

*Duties of trustees*

22. General fiduciary duties.
23. Duty to get in and preserve trust property.
24. Duty of trustee not to profit from trusteeship.
25. Duty to keep accounts.

26. Duty to give information.
27. Duty to keep trust property separate.
28. Duty of co-trustees to act together.
29. Impartiality of trustees.

*General powers of trustees*

30. Powers of trustees in relation to property.
31. Power to sue and compromise.
32. Consultation by trustees.
33. Delegation by trustees.
34. Powers of attorney.
35. Remuneration and expenses of trustees.
36. Power to appropriate.
37. Corporate trustee may act by resolution.
38. Non-disclosure of deliberations or letters of wishes.

*Liability for breach of trust*

39. Liability for breach of trust.
40. Beneficiary may relieve or indemnify trustee.
41. Trustees of more than one trust.
42. Dealings by trustees with third parties.
43. Position of outgoing trustees.
44. Trustees' lien.

*Protective trusts, class interests and certain powers*

45. Protective trusts.
46. Class interests.
47. Power of variation.
48. Power of accumulation and advancement.
49. Power of appointment.
50. Power of revocation.
51. Change of proper law.

*Failure, lapse and termination of trusts*

52. Failure or lapse of interest.
53. Termination of trusts.

*Powers of the court*

54. Appointment of resident trustees.
55. Power to relieve trustees from personal liability.
56. Power to make beneficiaries indemnify.

*Variation, etc. of trusts*

57. Variation of trusts on behalf of minors, etc.
58. Approval of particular transactions.
59. Charitable and non-charitable trusts – "cy-près".
60. General power to vary.

61. Trusts created by Orders in Council.
62. Judgement against trustee to be binding on beneficiaries.
63. Settlement of action against trustee by alternative dispute resolution to be binding on beneficiaries.

PART III
PROVISIONS APPLICABLE ONLY TO FOREIGN TRUSTS

64. Application of Part III.
65. Enforceability of foreign trusts.

PART IV
PROVISIONS OF GENERAL APPLICATION

66. Application of Part IV.
67. Rules of Royal Court.
68. Applications for directions.
69. General powers of court.
70. Powers of court in event of default.
71. Payment of costs.
72. Nature of trustee's interest.
73. Following trust property.
74. Bankruptcy of trustees.
75. Protection for persons dealing with trustees.
76. Limitation and prescription.

77. Constructive trusts.

PART V
SUPPLEMENTAL

78. Application of Law.
79. Constitution of Royal Court.
80. Interpretation.
81. Power to amend Law by Ordinance.
82. General provisions as to subordinate legislation.
83. Repeals and transitional provisions.
84. Savings.
85. Citation.
86. Commencement.

*Consolidated text*

# PROJET DE LOI

ENTITLED

## The Trusts (Guernsey) Law, 2007

**THE STATES**, in pursuance of their Resolution of the 15th December, 2006[a], have approved the following provisions which, subject to the Sanction of Her Most Excellent Majesty in Council, shall have force of law in the Island of Guernsey.

PART I
PRELIMINARY

**Existence of a trust.**

1. A trust exists if a person (a "**trustee**") holds or has vested in him, or is deemed to hold or have vested in him, property which does not form or which has ceased to form part of his own estate –

(a) for the benefit of another person (a "**beneficiary**"), whether or not yet ascertained or in existence, and / or

(b) for any purpose, other than a purpose for the benefit only of the trustee.

**NOTES**

*The following cases have referred to this Law:*

*In the Matter of X, an Incapable* 2007–08 GLR 387;
*In re the NAO Settlement* (2010) (Unreported, Royal Court, 29th November) (Guernsey Judgment No 40/2010);
*Trustee 'T' and Respondents* (2011) (Unreported, Royal Court, 4th July) (Guernsey Judgment No. 14/2011);
*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011);

[a] Article VIII of Billet d'État No. XXI of 2006.

*Colour Trusts, Wilson and Monaghan v. Le Gallez* (2012) (Unreported, Royal Court, Ordinary Division, 24th May) (Guernsey Judgment No. 24/2012);

*In the matter of the Guernsey Sporting Club* (2012) (Unreported, Royal Court, 28th September) (Guernsey Judgment No. 33/2012);

*Dervan et al. v. Concept Fiduciaries Limited et al.* (2012) (Unreported, Royal Court, 30th November) (Guernsey Judgment No. 38/2012);

*Jefcoate & Jefcoate v. Spread Trustee Company Limited et al.* (2013) (Unreported, Royal Court, 17th April) (Guernsey Judgment No. 11/2013);

*Tchenguiz v. Investec Trust (Guernsey) Limited* (Unreported, Royal Court, 18th April) (Guernsey Judgment No. 19/2013);

*A Trust Company & F, M & Cs* (2014) (Unreported, Royal Court, 5th February) (Guernsey Judgment No. 6/2014);

*Investec v. Glenalla* (2013) (Unreported, Royal Court, 6th December) (Guernsey Judgment No. 38/2013);

*Investec Trust (Guernsey) Limited et al. v. Glenalla Properties Limited et al.* (2014) (Unreported, Court of Appeal, 27th June) (Guernsey Judgment No. 28/2014);

*Jefcoate v. Spread Trustee Company Limited et al.* (2014) (Unreported, Royal Court, 31st October) (Guernsey Judgment 42/2014);

*Broadhead v. Spread Trustee Company Limited et al.* (2014) (Unreported, Royal Court, 26th November) (Guernsey Judgment 46/2014);

*Roman Zaleski v. GM Trustees Limited* (2015) (Unreported, Royal Court, 1st September) (Guernsey Judgment 42/2015).

*The following cases referred to the Trusts (Guernsey) Law, 1989:*

*In re Kleinwort Benson (Guernsey) Trustee Limited's Application* (1998) 25.GLJ.46;

*In re Mr and Mrs W's 1966 Settlement* (1998) 25.GLJ.46;

*Cross v. Benitrust International (C.I.) Limited* (1998) 25.GLJ.47;

*In the Matter of Global Energy Technologies Limited (in Compulsory Liquidation)* (1998) 26.GLJ.62;

*Kennedy & Kodell v. Global Energy Technologies Limited* (1998) 26.GLJ.62;

*Rowe & Rich v. Cross & Cross* (1998) 26.GLJ.85;

*Insinger Trust (Guernsey) Limited, as Trustee of the FDS Charitable Trust* (1999) 27.GLJ.147;

*Heeley v. Chick & Elder*; *Brown v. Orion Trust* (2000) 28.GLJ.39;

*Re Estates Dawes* (2000) 29.GLJ.56;

*Stuart-Hutcheson v. Spread Trustee Company Limited* [2002] GLR 3;

*Kleinwort Benson (Guernsey) Trustees et al. v Wilson* (2003) (Unreported, Royal Court, 31st December, 2002) (Guernsey Judgment No. 3/2003);

*Virani v Guernsey International Trustees Limited et al.* (2003) (Unreported, Court of Appeal, 4th December, 2002) (Guernsey Judgment No. 11/2003);

*In the Matter of the Foster Will Trust* (2003) (Unreported, Royal Court, 22nd July) (Guernsey Judgment No. 35/2003);

*Virani v Guernsey International Trustees Limited & Bennett* (2003) (Unreported, Royal Court, 1st August) (Guernsey Judgment No. 36/2003);

*In the Matter of the H. Sossen 1969 Settlement* [2004] GLR 4;

*A Limited and B Limited v. H.M. Procureur* [2004] GLR 17;

*In the Matter of the Pelican Trust* 2005–06 GLR 20;

*H.W. Trust Company Limited v. Cunningham* 2005–06 GLR 349;

*Wallbrook Trustees (Guernsey) Limited v. Baxter* 2005–06 GLR N-21;
*In the Matter of the H Trust* 2007–08 GLR 118;
*In the Matter of the V Settlement* 2007–08 GLR 240;
*In the Matter of X, an Incapable* 2007–08 GLR 387;
*Hutcheson and others v. Spread Trustee Company Limited* 2009–10 GLR 197;
*Spread Trustee Company Limited* v. *Hutcheson et al.* (2009) (Unreported, Court of Appeal, 26th November) (Guernsey Judgment No. 49/2009).
*In re a Settlement* (2011) (Unreported, Royal Court, 28th June) (Guernsey Judgment No. 25/2011);
*Spread Trustee Co Ltd v. Hutcheson & ors* [2011] UKPC 13.

**Validity of trusts.**

**2.** Subject to the provisions of this Law, a trust is valid and enforceable in Guernsey.

**Proper law of trust.**

**3.** (1) Subject to sections 51 and 57, the proper law of a trust is –

(a) the law chosen by the settlor to be the proper law, the choice being expressed or implied in the terms of the trust, or

(b) if no law is so chosen, the law with which the trust has its closest connection at the time of its creation, and in determining the law with which a trust has its closest connection regard shall be had in particular to –

(i) the place of administration of the trust designated by the settlor,

(ii) the situs of the assets of a trust,

(iii) the place of residence or business of the trustee,

(iv) the objects of the trust and the places where they are to be fulfilled.

(2) A trust the proper law of which is the law of Guernsey is referred to in this Law as a "**Guernsey trust**".

(3) For the purposes of subsection (1)(a), where the proper law of a trust is expressed (in whatever terms) to be the law of the Bailiwick of Guernsey, without further particularity, the proper law of the trust shall be deemed to be the law of Guernsey.

**NOTE**

*The following case has referred to section 3:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

**Jurisdiction of court.**

**4.** (1) The Royal Court sitting as an Ordinary Court (**"the Royal Court"**) has jurisdiction in respect of –

(a) a Guernsey trust, and

(b) any other trust –

(i) a trustee of which is resident in Guernsey,

(ii) any property of which is situated or administered in Guernsey, or

(iii) the terms of which provide that the Royal Court is to have jurisdiction.

(2) For the purposes of subsection (1)(b)(iii), where the terms of a trust provide, in whatever terms and without further particularity, that the courts of the Bailiwick, or the courts of Guernsey, are to have jurisdiction, the terms of the trust shall be deemed to provide that the Royal Court is to have jurisdiction,

**NOTE**

*The following cases have referred to section 4:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011);

*Colour Trusts, Wilson and Monaghan v. Le Gallez* (2012) (Unreported, Royal Court, Ordinary Division, 24th May) (Guernsey Judgment No. 24/2012).

## PART II

## PROVISIONS APPLICABLE ONLY TO GUERNSEY TRUSTS

**Application of Part II.**

**5.** This Part of this Law applies only to Guernsey trusts.

*Creation, validity and duration of Guernsey trusts*

**Creation of a trust.**

**6.** (1) Subject to subsections (2), (3) and (4), a trust may be created –

(a) by oral declaration,

(b) by an instrument in writing,

(c) by conduct, or

(d) in any other manner whatsoever.

(2) A unit trust may be created only by an instrument in writing.

(3) A trust of real property situated in Guernsey may be created only by an instrument in writing.

(4) Nothing in subsection (3) –

(a) applies in relation to a trust of real property created before the commencement of this Law, or

(b) affects the creation or operation of resulting, implied or constructive trusts.

(5) No technical expressions are needed for the creation of a trust.

**NOTE**

*The following case has referred to section 6:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

**Property which may be held on trust.**

**7.** (1) Any property may be held on trust.

(2) A trustee may accept property to be held on trust from any person.

**Beneficiaries of a trust.**

**8.** (1) A beneficiary shall be –

(a) identifiable by name, or

(b) ascertainable by reference to –

(i) a class, or

(ii) a relationship to another person, whether or not living at the time of the creation of the trust or at the time by reference to which, under the terms of the trust, members of a class are to be determined.

(2) The terms of a trust may provide for the addition or removal of a person as beneficiary or for the exclusion from benefit of a beneficiary either revocably or irrevocably.

(3) The terms of a trust may impose an obligation on a beneficiary as a condition of benefit.

(4) A settlor or trustee of a trust may also be a beneficiary thereof.

**NOTE**

*The following case has referred to section 8:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

**Disclaimer of beneficial interest.**

**9.** (1) Subject to the terms of the trust, a beneficiary may disclaim his interest or any part of it, whether or not he has received any benefit from it.

(2) A disclaimer shall be in writing and, subject to the terms of the trust –

(a) may be temporary, and

(b) may, if the disclaimer so provides, be revoked in the manner and circumstances specified thereby.

(3) A disclaimer is not effective until received by a trustee.

**Nature of beneficial interest.**

**10.** The interest of a beneficiary is personal property and, subject to the terms of the trust, may be dealt with or charged accordingly.

**Validity and enforceability of trust.**

**11.** (1) Subject to subsections (2) and (3), a trust is valid and enforceable in accordance with its terms.

(2) A trust is invalid and unenforceable to the extent that –

(a) it purports to do anything contrary to law of Guernsey,

(b) it confers or imposes any right or function the exercise or discharge of which would be contrary to the law of Guernsey,

(c) it has no beneficiary identifiable or ascertainable under section 8(1), unless –

(i) it is for a charitable purpose, and / or

(ii) it is for a non-charitable purpose in relation to which it is valid and enforceable by virtue of section 12(1), or

(d) the Royal Court declares that –

(i) it was established by duress, fraud, mistake, undue influence or misrepresentation or in breach of fiduciary duty,

(ii) it is immoral or contrary to public policy,

(iii) its terms are so uncertain that its performance is rendered impossible, or

(iv) the settlor was, at the time of its creation, incapable of creating such a trust.

(3) Where some of the terms of a trust are invalid but others are

not –

       (a)    if the terms cannot be separated, the trust is invalid,

       (b)    if the terms can be separated, the Royal Court may declare that the trust is valid as to the terms which are valid.

     (4)    Where a trust is partially invalid, the Royal Court may declare what property is and what property is not to be held subject to the trust.

     (5)    Property as to which a trust is invalid shall, subject to any order of the Royal Court, be held by the trustees on trust for the settlor absolutely or, if he is dead, for his personal representative.

     (6)    An application to the Royal Court under this section may be made by any person mentioned in section 69(2).

**Trusts for non-charitable purposes; and enforcers.**

**12.**    (1)    A trust for or including non-charitable purposes created by an instrument in writing and the terms of which provide for –

       (a)    the appointment of an enforcer in relation to the trust's non-charitable purposes, and

       (b)    the appointment of a new enforcer at any time when there is none,

is valid and enforceable in relation to its non-charitable purposes.

     (2)    It is the fiduciary duty of an enforcer to enforce the trust in relation to its non-charitable purposes.

     (3)    The appointment of a person as enforcer of a trust has no effect if the person is also a trustee of the trust.

(4) An enforcer may resign his office by delivering a written notice of resignation to the trustees.

(5) Subject to subsection (6), a resignation takes effect –

(a) on delivery of the notice, or

(b) on such later date or on the happening of such later event as may be specified therein.

(6) A resignation given to facilitate a breach of trust or a breach of the enforcer's fiduciary duty has no effect.

(7) An enforcer ceases to be the enforcer of a trust immediately on –

(a) his removal from office by the Royal Court,

(b) his resignation becoming effective,

(c) the coming into effect of a provision in the terms of the trust under or by which he is removed from office or otherwise ceases to hold office, or

(d) his appointment as a trustee of the trust.

(8) A trustee of a trust which includes non-charitable purposes which is valid and enforceable by virtue of subsection (1) shall, at any time when there is no enforcer in relation to those purposes, take such steps as may be necessary to secure the appointment of an enforcer.

(9) Where the trustee of a trust which includes non-charitable purposes which is valid and enforceable by virtue of subsection (1) has reason to believe that the enforcer in relation to those purposes –

(a) is unwilling or is refusing to act,

(b) is bankrupt or otherwise unfit to act, or

(c) is incapable of acting,

the trustee shall apply to the Royal Court for the removal of the enforcer and the appointment of a replacement.

(10) For the avoidance of doubt, the settlor or a corporation can be appointed as an enforcer.

(11) The terms of a trust for non-charitable purposes may provide for the addition, variation or removal of a non-charitable purpose of the trust or for the exclusion of a non-charitable purpose from the objects of the trust.

**Duty of enforcer not to profit from his office.**

**13.** (1) An enforcer shall not –

(a) derive, directly or indirectly, any profit from his appointment,

(b) cause or permit any other person to so derive any such profit, or

(c) on his own account enter into any transaction with the trustees, or relating to the trust property, which may result in any such profit,

except –

(i) with the approval of the Royal Court,

(ii) as permitted by the provisions of this Law, or

(iii) as expressly provided by the terms of the trust.

(2)      An enforcer is entitled to be paid, and shall be reimbursed, by the trustees from the trust property for all expenses and liabilities properly incurred in connection with the trust.

**Application of Guernsey law to questions of validity.**

**14.**      (1)      Subject to the terms of the trust, all questions arising in relation to a Guernsey trust or any disposition of property to or upon such a trust, including (without limitation) questions as to –

(a)      the capacity of the settlor,

(b)      the validity, interpretation or effect of the trust or disposition or any variation or termination thereof,

(c)      the administration of the trust, whether it is conducted in Guernsey or elsewhere, including (without limitation) questions as to the functions, appointment and removal of trustees and enforcers,

(d)      the existence and extent of any functions in respect of the trust, including (without limitation) powers of variation, revocation and appointment, and the validity of the exercise of any such function,

(e)      the distribution of the trust property,

are to be determined according to the law of Guernsey without reference to the law of any other jurisdiction.

For these purposes **"the law of Guernsey"** does not include the Guernsey rules of private international law, except those set out in this section.

(2)      Subsection (1) –

(a)      does not validate any disposition of property which is neither owned by the settlor nor the subject of a power

of disposition vested in the settlor,

(b) does not affect the recognition of the law of any other jurisdiction in determining whether the settlor is the owner of any property or the holder of any such power,

(c) is subject to any express provision to the contrary in the terms of the trust or disposition,

(d) does not, in determining the capacity of a corporation, affect the recognition of the law of its place of incorporation,

(e) does not affect the recognition of the law of any other jurisdiction prescribing the formalities for the disposition of property,

(f) subject to subsection 3, does not validate any trust or disposition of real property situate in a jurisdiction other than Guernsey which is invalid under the law of that jurisdiction, and

(g) subject to subsection 3, does not validate any testamentary disposition which is invalid under the law of the testator's domicile at the time of his death.

(3) No Guernsey trust, and no disposition of property to or upon such a trust, is void, voidable, liable to be set aside, invalid or subject to any implied condition, nor is the capacity of any settlor, trustee, enforcer, trust official or beneficiary to be questioned, nor is any settlor, trustee, enforcer, trust official, beneficiary or third party to be subjected to any obligation or liability or deprived of any right, claim or interest, by reason that –

(a) the laws of any other jurisdiction prohibit or do not recognise the concept of a trust, or

(b) the trust or disposition –

(i) avoids or defeats or potentially avoids or defeats rights, claims, interests, obligations or liabilities conferred or imposed by the law of any other jurisdiction on any person –

(A) by reason of a personal relationship to a settlor or any beneficiary, or

(B) by way of foreign heirship rights, or

(ii) contravenes or potentially contravenes any rule of law, judgment, order or action of any other jurisdiction intended to recognise, protect, enforce or give effect to any such rights, claims, interests, obligations or liabilities.

(4) Notwithstanding any legislation or other rule of law for the time being in force in relation to the recognition or enforcement of judgments, no judgment or order of a court of a jurisdiction outside Guernsey shall be recognised or enforced or give rise to any right, obligation or liability or raise any estoppel if and to the extent that –

(a) it is inconsistent with this Law, or

(b) the Royal Court, for the purposes of protecting the interests of the beneficiaries or in the interests of the proper administration of the trust, so orders.

(5) This section applies –

(a) whenever the trust or disposition arose or was made,

(b) notwithstanding any other provision of this Law.

(6) In relation to a Guernsey trust of personal property or any disposition of such property to or upon such a trust, the law of Guernsey relating to légitime and the rights of a surviving spouse apply only where the settlor is domiciled there at the time of his death.

---

**NOTE**

*The following case has referred to section 14:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

---

**Reservation or grant of certain powers does not invalidate trust.**

**15.** (1) A trust is not invalidated by the reservation or grant by the settlor (whether to the settlor or to any other person) of all or any of the following powers or interests –

(a) a power to revoke, vary or amend the terms of the trust or any trusts or functions arising thereunder, in whole or in part,

(b) a power to advance, appoint, pay or apply the income or capital of the trust property or to give directions for the making of any such advancement, appointment, payment or application,

(c) a power to act as, or give directions as to the appointment or removal of, a director or other officer of any corporation wholly or partly owned as trust property,

(d) a power to give directions to the trustee in connection with the purchase, retention, sale, management, lending or charging of the trust property or the exercise of any function arising in respect of such

property,

(e) a power to appoint or remove any trustee, enforcer, trust official or beneficiary,

(f) a power to appoint or remove any investment manager or investment adviser or any other professional person acting in relation to the affairs of the trust or holding any trust property,

(g) a power to change the proper law of the trust or the forum for the administration of the trust,

(h) a power to restrict the exercise of any function of a trustee by requiring that it may only be exercised with the consent of the settlor or any other person identified in the terms of the trust,

(i) a beneficial interest in the trust property.

(2) The reservation, grant or exercise of a power or interest referred to in subsection (1) does not –

(a) constitute the holder of the power or interest a trustee,

(b) subject to the terms of the trust, impose any fiduciary duty on the holder, or

(c) of itself render any trustee liable in respect of any loss to the trust property.

(3) A trustee who acts in compliance with the valid exercise of any power referred to in subsection (1) does not, by reason only of such compliance, act in breach of trust.

**Duration of trust, etc.**

**16.** (1) Subject to the terms of the trust and subsection (2) –

(a) there is no limit on the period for which a trust may continue to be valid and enforceable, and

(b) for the avoidance of doubt, no rule against perpetuities or remoteness of vesting or any analogous rule applies to a trust or to any advancement, appointment, payment or application of property from a trust.

(2) A trust created before the commencement of this Law shall terminate on the expiration of 100 years from the date of its creation, unless –

(a) it is a trust for charitable purpose, or

(b) it is terminated sooner.

(3) Except where the terms of a trust expressly provide to the contrary, no advancement, appointment, payment or application of income or capital from the trust to another trust is invalidated solely by reason of that other trust continuing to be valid and enforceable beyond the date on which the first trust must terminate.

*Appointment, retirement and discharge of trustees*

**Number of trustees.**

**17.** (1) The number of trustees of a trust shall not be less than two, unless –

(a) only one trustee was originally appointed,

(b) a corporate trustee resident in Guernsey is acting,

(c) the Public Trustee is acting, or

(d) the terms of the trust provide otherwise.

(2) A trust shall not fail on the ground that there is no trustee or less than the number required by subsection (1).

**NOTE**

*The following case has referred to section 17:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

**Appointment of new or additional trustees.**

**18.** (1) Where –

(a) the terms of a trust contain no provision for the appointment of a new or additional trustee,

(b) any such provision has lapsed or failed, or

(c) the person with power to make any such appointment is not capable of exercising the power,

a new or additional trustee may be appointed by –

(i) the existing trustee,

(ii) the last remaining trustee,

(iii) the personal representative or liquidator of the last remaining trustee, or

(iv) the Royal Court.

(2) Subject to the terms of the trust, a trustee appointed under this section has the same functions, and may act in all respects, as if he had been originally appointed a trustee.

(3) A trustee with power to appoint a new or additional trustee who fails to exercise the power may be removed from office by the Royal Court.

(4) On the appointment of a new or additional trustee, anything necessary to vest the trust property in him jointly with his co-trustees (if any) shall be done.

**No renunciation after acceptance.**

**19.** (1) A person appointed as trustee need not accept the appointment, but he shall be deemed to have done so if he knowingly intermeddles with the trust or its affairs.

(2) A person appointed as trustee may, before acceptance (actual or deemed) –

(a) disclaim the appointment by notice in writing to the settlor or to the other trustees, or

(b) if the settlor is dead or cannot be found, and there are no other trustees, apply to the Royal Court for relief from the appointment, whereupon the Royal Court may make such order as it thinks fit,

but if the person appointed does not act under paragraph (a) or (b) within a reasonable period of time of becoming aware of the appointment, he shall be deemed to have accepted it.

**Resignation or removal of trustees.**

**20.** (1) A trustee other than a sole trustee may resign his office by delivering a written notice of resignation to his co-trustees.

(2) Subject to subsection (3) and to the terms of the trust, a resignation takes effect –

(a) on delivery of the notice, or

     (b)     on such later date or on the happening of such later event as may be specified therein.

    (3)     A resignation –

     (a)     given to facilitate a breach of trust, or

     (b)     which would result in there being no trustee or less than the number required by section 17(1),

has no effect.

    (4)     A trustee ceases to be a trustee immediately on –

     (a)     his removal from office by the Royal Court,

     (b)     his resignation taking effect, or

     (c)     the coming into effect of, or the exercise of a power under, a provision in the terms of the trust under or by which he is removed from or otherwise ceases to hold his office.

    (5)     A person who ceases to be a trustee under this section shall do everything necessary to vest the trust property in the new or continuing trustees.

    (6)     Subsections (1) and (2) are subject to the terms of the trust.

**Position of continuing trustees on reduction in number of trustees.**

    **21.**     Subject to the terms of the trust, where the number of trustees falls below the number required by section 17(1) –

     (a)     the necessary number of additional trustees shall be appointed, and

(b) until the required number is reached, the existing trustee shall act only to preserve the trust property.

*Duties of trustees*

**General fiduciary duties.**

**22.** (1) A trustee shall, in the exercise of his functions, observe the utmost good faith and act en bon père de famille.

(2) A trustee shall execute and administer the trust and shall exercise his functions under it –

(a) in accordance with the provisions of this Law, and

(b) subject to those provisions –

(i) in accordance with the terms of the trust, and

(ii) only in the interests of the beneficiaries or the advancement of the charitable or non-charitable purpose, as the case may be.

**Duty to get in and preserve trust property.**

**23.** A trustee shall, subject to the terms of the trust and to the provisions of this Law –

(a) ensure that the trust property is held by or vested in him or is otherwise under his control, and

(b) preserve and enhance, so far as is reasonable, the value of the trust property.

**Duty of trustee not to profit from trusteeship.**

**24.** A trustee shall not –

(a) derive, directly or indirectly, any profit from his

trusteeship,

(b) cause or permit any other person to so derive any such profit, or

(c) on his own account enter into any transaction with his co-trustees, or relating to the trust property, which may result in any such profit,

except –

(i) with the approval of the Royal Court,

(ii) as permitted by the provisions of this Law, or

(iii) as expressly provided by the terms of the trust.

**Duty to keep accounts.**

**25.** A trustee shall keep accurate accounts and records of his trusteeship.

**Duty to give information.**

**26.** (1) A trustee shall, at all reasonable times, at the written request of –

(a) any enforcer, or

(b) subject to the terms of the trust –

(i) any beneficiary (including any charity named in the trust),

(ii) the settlor, or

(iii) any trust official,

provide full and accurate information as to the state and amount of the trust property.

(2) Where the terms of the trust prohibit or restrict the provision of any information described in subsection (1), a trustee, beneficiary, trust official or settlor may apply to the Royal Court for an order authorising or requiring the provision of the information.

(3) The person applying to the Royal Court for an order under subsection (2) must show that the provision of the information is necessary or expedient –

(a) for the proper disposal of any matter before the court,

(b) for the protection of the interests of any beneficiary, or

(c) for the proper administration or enforcement of the trust.

(4) In its application to a trust arising from a document or disposition executed or taking effect before the 18th April, 1989[b], subsection (1) only operates for the benefit of a beneficiary whose interest in the trust property became vested before that date, but this subsection does not prejudice any rights that the beneficiary may have under the terms of the trust.

**Duty to keep trust property separate.**

**27.** A trustee shall keep trust property separate from his own property and separately identifiable from any other property of which he is trustee.

**Duty of co-trustees to act together.**

**28.** (1) All the trustees of a trust shall, subject to the terms of the trust, join in the execution of the trust.

---

[b] The 18th April, 1989 was the date of commencement of the Trusts (Guernsey) Law, 1989.

(2) Subject to subsection (3), no function conferred on trustees shall be exercised unless all the trustees agree on its exercise.

(3) The terms of a trust may empower the trustees to act by a majority.

(4) A trustee who dissents from a decision of the majority may require his dissent to be recorded in writing.

(5) Notwithstanding the provisions of subsections (1) to (4), but subject to the provisions of subsection (6), in the case of a trust in respect of which the Public Trustee has been appointed to act as trustee under the Public Trustee (Bailiwick of Guernsey) Law, 2002 –

(a) the Public Trustee shall act alone in the execution of the trust,

(b) functions conferred on the trustees shall be exercised by the Public Trustee without the agreement of any other trustee, and

(c) the functions of any trustee other than the Public Trustee shall cease,

for so long as the appointment of the Public Trustee continues.

(6) Any provision of paragraphs (a) to (c) of subsection (5) may be disapplied in any particular case by –

(a) the Public Trustee in writing,

(b) the court appointing the Public Trustee, at the time of the appointment, or

(c) the Royal Court, at any other time.

**Impartiality of trustees.**

**29.** (1) Where a trust has –

(a) more than one beneficiary or charitable or non-charitable purpose, or

(b) a beneficiary and a charitable or non-charitable purpose,

the trustees, subject to the terms of the trust and to subsection (2), shall be impartial and shall not execute the trust for the advantage of one at the expense of another.

(2) Subsection (1) does not prejudice the exercise of a discretion conferred on a trustee by the terms of the trust.

*General powers of trustees*

**Powers of trustees in relation to property.**

**30.** Subject to the provisions of this Law and to the terms of the trust, a trustee has, in relation to the trust property, all the powers of a beneficial owner.

**Power to sue and compromise.**

**31.** (1) A trustee may sue and be sued as trustee.

(2) A trustee may without the sanction of the Royal Court compromise or settle any action or claim brought by or against the trustee or in any way relating to the trust or the trust property.

**Consultation by trustees.**

**32.** (1) A trustee may, at the expense of the trust property, consult professional persons in relation to the affairs of the trust.

(2) The terms of the trust may require a trustee to consult or obtain the consent of another person before exercising any function.

(3) A person shall not, by virtue of being so consulted or giving or refusing such consent –

(a) be deemed to be a trustee, or

(b) if the terms of the trust so provide, be under any fiduciary duty to the beneficiaries or the settlor.

**Delegation by trustees.**

**33.** (1) A trustee shall not delegate his functions unless permitted to do so –

(a) by the provisions of this Law or by the terms of the trust, or

(b) in the case of the Public Trustee, by the provisions of the Public Trustee (Bailiwick of Guernsey) Law, 2002.

(2) Except where the terms of the trust specifically provide to the contrary, a trustee may –

(a) delegate the management of trust property to, and appoint, investment managers whom the trustee reasonably considers to be competent and qualified to manage the investment of the trust property,

(b) appoint professional persons to act in relation to the affairs of the trust or to hold any trust property, and

(c) authorise any such manager or person to retain any commission or other payment usually payable for services of the description rendered.

(3) A trustee who, without any breach on his part of section 22(1), makes or permits the continuation of a delegation or appointment under

subsection (2), is not liable for any loss to the trust arising from the delegation or appointment.

**Powers of attorney.**

**34.** (1) Unless the terms of the trust provide to the contrary, a trustee may, by power of attorney, delegate for a period not exceeding 3 years the performance of any trust or function vested in him (alone or jointly) as trustee.

(2) A trustee who delegates a trust or function by power of attorney under this section is referred to in this section as the "**donor**", and the person to whom the trust or function is delegated is referred to as the "**donee**".

(3) The persons who may be donees include corporate trustees but not (unless a corporate trustee) the only other co-trustee of the donor.

(4) A power of attorney under this section shall be in writing and shall –

(a) if the donor is an individual, be signed by him, or by his direction and in his presence, in the presence of a witness, who shall also sign, or

(b) if the donor is a corporate trustee, be executed by the donor in accordance with its articles of association or its other documents of constitution.

(5) Within seven days of giving a power of attorney under this section, the donor shall give written notice thereof to –

(a) every other person who, under the terms of the trust, has power (alone or jointly) to appoint a new trustee, and

(b) every co-trustee.

(6) The notice under subsection (5) shall state –

(a) the date of commencement and duration of the power of attorney,

(b) the name and address of the donee,

(c) the reason for giving the power of attorney, and

(d) the trust or function delegate.

(7) Failure to comply with subsection (5) or (6) does not of itself, in favour of a person dealing with the donee, invalidate anything done by the donee.

(8) The donor is bound by and liable for all acts and defaults of the donee done or purportedly done under the power of attorney as if they were his own acts and defaults.

(9) For the purpose of performing the trust or function delegated, the donee may exercise any function conferred on the donor as trustee by law or by the terms of the trust, with the exception of the power to give powers of attorney under this section.

(10) The period referred to in subsection (1) does not apply to a power of attorney given as part of any arrangement –

(a) for the subordination of debts, or

(b) to confer security over the trust property,

and **"security"** includes any mortgage, charge, hypothèque, lien or other security, including a security interest within the meaning of the Security Interests (Guernsey) Law, 1993[c].

**Remuneration and expenses of trustees.**

[c] Order in Council No. III of 1993.

**35.** (1) Unless authorised by –

(a) the terms of the trust,

(b) the consent in writing of every beneficiary, or

(c) an order of the Royal Court,

a trustee is not entitled to remuneration for his services.

(2) A trustee may pay from the trust property, and may reimburse himself from the trust property for, all expenses and liabilities properly incurred in connection with the trust.

(3) For the avoidance of doubt, and subject to the terms of the trust, the cost of purchasing and maintaining professional indemnity insurance is, for the purposes of subsection (2), an expense properly incurred in connection with the trust, but not to the extent that the insurance is against the trustee's liability for a breach of trust arising from his own fraud, wilful misconduct or gross negligence.

(4) Notwithstanding the provisions of subsection (1), but without prejudice to the provisions of subsection (2), the Public Trustee may, in the case of a trust in respect of which he has been appointed to act as trustee under the Public Trustee (Bailiwick of Guernsey) Law, 2002, pay from the trust property, and reimburse himself from the trust property for, all fees payable to the Public Trustee pursuant to the provisions of the said Law in connection with the trust, unless –

(a) the court appointing the Public Trustee directs otherwise at the time of the appointment, or

(b) the Royal Court directs otherwise at any other time.

**Power to appropriate.**

**36.** Subject to the terms of the trust, a trustee may, without the consent of any beneficiary, appropriate trust property in or towards satisfaction of the interest of a beneficiary in such manner and in accordance with such valuation as he

thinks fit.

**Corporate trustee may act by resolution.**

**37.** A corporate trustee may –

(a) act in connection with a trust by a resolution of the corporate trustee or of its board of directors or other governing body, or

(b) by such a resolution appoint an officer or employee, or a committee of officers or employees or both, to act on its behalf in connection with the trust.

**Non-disclosure of deliberations or letters of wishes.**

**38.** (1) A trustee is not, subject to the terms of the trust and to any order of the Royal Court, obliged to disclose –

(a) documents which reveal –

(i) his deliberations as to how he should exercise his functions as trustee,

(ii) the reasons for any decision made in the exercise of those functions,

(iii) any material upon which such a decision was or might have been based,

(b) any letter of wishes.

(2) A **"letter of wishes"** is a letter or other document intimating how the settlor or beneficiary wishes the trustees to exercise any of their functions.

(3) The person applying to the Royal Court for an order under this section for the disclosure of any document must show that the disclosure is necessary or expedient –

(a) for the proper disposal of any matter before the court,

(b) for the protection of the interests of any beneficiary, or

(c) for the proper administration or enforcement of the trust.

*Liability for breach of trust*

**Liability for breach of trust.**

**39.** (1) Subject to the provisions of this Law and to the terms of the trust, a trustee who commits or concurs in a breach of trust is liable for –

(a) any loss or depreciation in value of the trust property resulting from the breach, and

(b) any profit which would have accrued to the trust had there been no breach.

(2) A trustee may not set off a profit accruing from one breach of trust against a loss or depreciation in value resulting from another.

(3) A trustee is not liable for a breach of trust committed by another person prior to his appointment.

(4) A trustee is not liable for a breach of trust committed by a co-trustee unless –

(a) he becomes or ought to have become aware of the breach or of the intention of his co-trustee to commit the breach, and

(b) he actively conceals the breach or intention, or fails within a reasonable time to take proper steps to protect

or restore the trust property or to prevent the breach.

      (5)    Where trustees are liable for a breach of trust, they are liable jointly and severally.

      (6)    A trustee who becomes aware of a breach of trust to which subsection (3) applies shall take all reasonable steps to have the breach remedied.

      (7)    The terms of a trust may not –

          (a)    relieve a trustee of liability for a breach of trust arising from his own fraud, wilful misconduct or gross negligence, or

          (b)    grant him any indemnity against the trust property in respect of any such liability.

      (8)    For the avoidance of doubt, and without prejudice to any other provision of this Law –

          (a)    subsection (7) applies to a trust whenever created, and

          (b)    a term of a trust is invalid to the extent that it purports to –

               (i)    relieve a trustee of liability for a breach of trust arising from his own fraud, wilful misconduct or gross negligence, or

               (ii)    grant him any indemnity against the trust property in respect of any such liability.

---

**NOTE**

*The following cases have referred to section 39:*

    *Tchenguiz v. Investec Trust (Guernsey) Limited* (Unreported, Royal

Court, 18th April) (Guernsey Judgment No. 19/2013);
*Roman Zaleski v. GM Trustees Limited* (2015) (Unreported, Royal Court, 1st September) (Guernsey Judgment 42/2015).

---

**Beneficiary may relieve or indemnify trustee.**

**40.** (1) A beneficiary may –

(a) relieve a trustee of liability to him for any breach of trust,

(b) indemnify a trustee against liability for any breach of trust.

(2) Subsection (1) does not apply if the beneficiary –

(a) is a minor or a person under legal disability,

(b) does not have a full knowledge of all material facts, or

(c) is improperly induced by the trustee to act under subsection (1).

**Trustees of more than one trust.**

**41.** (1) A trustee is not, in the absence of fraud, affected by notice of any instrument, matter, fact or other thing in relation to a trust if he obtained notice of it by reason of his acting or having acted for the purposes of another trust.

(2) A trustee of a trust shall disclose to his co-trustees any interest which he has as trustee of another trust if any transaction in relation to the first mentioned trust is to be entered into with the trustees of the other trust.

**Dealings by trustees with third parties.**

**42.** (1) Subject to subsection (3), where, in a transaction or matter affecting a trust, a trustee informs a third party that he is acting as trustee or the third party is otherwise aware of the fact, the trustee does not incur any personal liability and a claim by the third party in respect of the transaction or matter

extends only to the trust property.

(2) If the trustee fails to inform the third party that he is acting as trustee and the third party is otherwise unaware of the fact –

(a) he incurs personal liability to the third party in respect of the transaction or matter, and

(b) he has a right of indemnity against the trust property in respect of his personal liability, unless he acted in breach of trust.

(3) Nothing in this section prejudices a trustee's liability for breach of trust or any claim for breach of warranty of authority.

(4) This section applies to a transaction notwithstanding the lex causae of the transaction, unless the terms of the transaction expressly provide to the contrary.

---

**NOTE**

*The following case has referred to section 42:*

*Investec Trust (Guernsey) Limited at al v. Glenalla Properties Limited et al.* (2014) (Unreported, Court of Appeal, 27th June) (Guernsey Judgment No. 28/2014).

---

**Position of outgoing trustees.**

**43.** (1) When a trustee resigns or is removed –

(a) he shall, subject to paragraph (b), duly surrender all trust property held by or vested in him or otherwise under his control, and

(b) he may require that he be provided with reasonable security for liabilities (existing, future, contingent or otherwise) before surrendering the trust property.

(2) Where the security to be given for the purposes of subsection (1)(b) is to be given by way of indemnity against the trust property, the indemnity shall not, except with leave of the Royal Court or with the consent of all beneficiaries, be greater than that to which the trustee would have been entitled had he remained a trustee.

(3) A trustee who complies with subsection (1)(a) is relieved of liability to any beneficiary, trustee or other person interested under the trust for any act or omission in relation to the trust property or to his functions as a trustee.

However, a trustee is not by reason only of such compliance relieved of any liability –

(a) arising from a breach of trust to which he (or, in the case of a corporate trustee, any of its officers or employees) was a party or was privy,

(b) in respect of an action to recover from him (or, in the case of a corporate trustee, any of its officers or employees) trust property or the proceeds thereof in his possession.

(4) An indemnity given in writing by a trustee or beneficiary and expressed to be in favour of a trustee who has previously resigned or been removed from office (a **"previous trustee"**) is, subject to its terms, enforceable by the previous trustee against the indemnifying party notwithstanding that the previous trustee is not a party to or signatory of the indemnity.

**Trustees' lien.**

**44.** (1) For the purpose of securing a trustee's right to pay from the trust property, and to be reimbursed from the trust property for, all expenses and liabilities properly incurred in connection with the trust, a trustee is entitled to a non-possessory lien over the trust property in respect of all such expenses and liabilities (existing, future, contingent or otherwise).

(2)     The lien –

    (a)     continues after the trustee ceases to be a trustee and has duly surrendered all trust property in accordance with section 43, and

    (b)     is without prejudice to any indemnity or other security to which the trustee is entitled.

(3)     The lien attaches to any trust property, except to the extent that –

    (a)     the lien is expressly waived or released, or

    (b)     the property –

        (i)     is no longer identifiable,

        (ii)     is in the hands of a bona fide purchaser for value or a person (other than the trustees) who derived title through such a purchaser, or

        (iii)     comprises real property.

(4)     Subject to subsection (3), in this section **"trust property"** includes property that has ceased to be held on trust by reason of distribution from the trust (including a distribution on termination of the trust) or otherwise and property into which trust property has been converted.

(5)     The lien granted under subsection (1) is the right of the trustee, where he is not exonerated or reimbursed from the trust property, to follow, recover and appropriate the trust property for the purpose of realisation, payment and reimbursement.

*Protective trusts, class interests and certain powers*

**Protective trusts.**

**45.** The terms of a trust may make the interest of a beneficiary –

(a) liable to termination,

(b) subject to a restriction on alienation or dealing, or

(c) subject to diminution or termination in the event of the beneficiary becoming bankrupt or any of his property becoming liable to arrest, saisie, or similar process of law.

**Class interests.**

**46.** Where a trust is in favour of a class of persons then, subject to the terms of the trust –

(a) the class closes when it is no longer possible for any other person to become a member of the class,

(b) a woman over the age of 60 years shall be deemed to be no longer capable of bearing a child, and

(c) where the interest of the class relates to income, and no member of the class exists, the income shall be accumulated and, subject to section 16(2), retained until a member of the class exists or the class closes.

**Power of variation.**

**47.** (1) The terms of a trust may be varied in any manner provided by those terms.

(2) This section is in addition to sections 57 to 61.

**Power of accumulation and advancement.**

**48.** (1) The terms of a trust may direct or authorise the accumulation for any period of all or part of the income of the trust.

For the avoidance of doubt, no rule limiting the period of accumulations or any analogous rule applies to a trust or to any advancement, appointment, payment or application of assets from a trust.

(2) Subject to subsection (3), income which is not distributed shall be accumulated.

(3) Subject to the terms of the trust and to any prior interest or charge affecting the trust property, the trustees may –

(a) where a beneficiary is a minor (whether or not his interest is vested), apply the income attributable to his interest, or any part of that income, to or for his maintenance, education or other benefit,

(b) advance or apply for the benefit of a beneficiary part of the trust property prior to the happening of the event on which he is to become absolutely entitled thereto.

(4) Subject to the terms of the trust –

(a) any trust property advanced or applied under this section shall be brought into account in determining the beneficiary's share in the trust property, and

(b) no part of the trust property so advanced or applied shall exceed the beneficiary's vested, presumptive or contingent share in the trust property.

(5) The receipt of a guardian of a beneficiary who is a minor or a person under legal disability is a sufficient discharge to the trustees for a payment made to the beneficiary or for his benefit.

**Power of appointment.**

**49.** The terms of a trust may confer on the settlor, trustees or any other person power to appoint or assign all or any of the trust property or any interest in it to, or for the benefit of, any person (whether or not a beneficiary of the trust immediately prior to the appointment or assignment).

**Power of revocation.**

**50.** (1) A trust and any power or exercise of a power under a trust may be expressed to be capable of –

(a) revocation, in whole or in part, or

(b) variation.

(2) No revocation or variation prejudices anything lawfully done by a trustee in relation to the trust before he receives notice of the revocation or variation.

(3) Subject to the terms of the trust, if the trust is revoked in whole or in part, the trustees shall hold the trust property or that part of the trust property which is the subject of the revocation, as the case may be, in trust for the settlor absolutely or, if he is dead, for his personal representative.

**Change of proper law.**

**51.** (1) The terms of a trust may provide for the proper law of the trust to be changed from the law of Guernsey to the law of any other jurisdiction.

(2) Subsection (1) is without prejudice to the powers of the Royal Court under section 57.

(3) A change in the proper law of a trust does not affect the legality or validity of, or render any person liable in respect of, anything done before the change.

*Failure, lapse and termination of trusts*

**Failure or lapse of interest.**

    **52.**    Subject to the terms of the trust and to any order of the Royal Court, where –

        (a)    an interest lapses,

        (b)    a trust terminates,

        (c)    there is no beneficiary and no person who can become a beneficiary in accordance with the terms of the trust, or

        (d)    property is vested in a person otherwise than for his sole benefit, but the trusts on which he is to hold the property are not declared or communicated to him,

the interest or property concerned shall be held by the trustees on trust for the settlor absolutely or, if he is dead, for his personal representative.

**Termination of trusts.**

    **53.**    (1)    On the termination of a trust the trust property shall, subject to subsection (2), be distributed by the trustees within a reasonable time in accordance with the terms of the trust to the persons entitled thereto.

    (2)    The trustees may however require that they be provided with reasonable security for liabilities (existing, future, contingent or otherwise) before so distributing the trust property.

    (3)    Without prejudice to the powers of the Royal Court under subsection (4), and notwithstanding the terms of the trust, where all the beneficiaries are in existence and have been ascertained, and none is a minor or a person under legal disability, they may require the trustees to terminate the trust and distribute the trust property among them.

    (4)    The Royal Court, on the application of any person mentioned in section 69(2), may –

(a) direct the trustees to distribute, or not to distribute, the trust property, or

(b) make such other order in respect of the termination of the trust and the distribution of the trust property as it thinks fit.

*Powers of the court*

**Appointment of resident trustees.**

**54.** (1) Where there is no trustee resident in Guernsey, a beneficiary may apply to the Royal Court for the appointment of a person, resident in Guernsey and nominated in the application, as an additional trustee.

(2) The Royal Court –

(a) if satisfied that notice of the application has been served on the existing trustees,

(b) having heard any representations of the existing trustees, of the settlor or his personal representatives, of the other beneficiaries, and of any other person described in section 32(2), and

(c) having ascertained that the person nominated is willing to act,

may appoint that person as an additional trustee.

**Power to relieve trustees from personal liability.**

**55.** The Royal Court may relieve a trustee wholly or partly of liability for a breach of trust, whether committed before or after the commencement of this Law, where it appears to the court that the trustee –

(a) has acted honestly and reasonably, and

(b) ought fairly to be excused –

(i) for the breach of trust,

(ii) for omitting to obtain the directions of the court in the matter in which the breach arose.

---

**NOTE**

*The following case has referred to section 55:*

*Jefcoate v. Spread Trustee Company Limited et al.* (2014) (Unreported, Royal Court, 31st October) (Guernsey Judgment 42/2014).

---

**Power to make beneficiaries indemnify.**

**56.** Where a trustee commits a breach of trust at the instigation or request or with the concurrence of a beneficiary, the Royal Court, whether or not the beneficiary is a minor or a person under legal disability, may impound all or part of his interest by way of indemnity to the trustee or a person claiming through him.

*Variation, etc of trusts*

**Variation of trusts on behalf of minors, etc.**

**57.** (1) The Royal Court, on the application of any person mentioned in section 69(2), on behalf of –

(a) a minor or a person under legal disability having, directly or indirectly, an interest, vested or contingent, under a trust,

(b) any person unborn,

(c) any person, ascertained or not, who may become entitled, directly or indirectly, to an interest under a trust, as being (at a future date or on the happening of a future event) a person of any specified description or a member of any specified class,

(d) any person, in respect of an interest that may accrue to him by virtue of the exercise of a discretionary power on the failure or determination of an existing interest, or

(e) with leave of the Royal Court, any other person,

may, subject to subsection (2), approve any arrangement which varies or revokes the terms of a trust or enlarges or modifies the powers of management or administration of any trustees, whether or not there is another person with a beneficial interest who is capable of assenting to the arrangement.

(2) The Royal Court shall not approve an arrangement on behalf of a person mentioned in subsection (1)(a), (b) or (c) unless the arrangement appears to be for his benefit.

**NOTE**

*The following cases have referred to section 57:*

*In the Matter of X, an Incapable* 2007–08 GLR 387;
*Trustee 'T' and Respondents* (2011) (Unreported, Royal Court, 4th July) (Guernsey Judgment No. 14/2011);
*In re a Settlement* (2011) (Unreported, Royal Court, 28th June) (Guernsey Judgment No. 25/2011);
*A Trust Company & F, M & Cs* (2014) (Unreported, Royal Court, 5th February) (Guernsey Judgment No. 6/2014).

**Approval of particular transactions.**

**58.** Where in the management or administration of a trust a transaction is, in the opinion of the Royal Court, expedient, but cannot be effected because the necessary power is not vested in the trustees by the terms of the trust or by law, the Royal Court, on the application of any person mentioned in section 69(2) –

(a) may confer on the trustees, generally or in any particular circumstances, the necessary power, on such terms and conditions as the court thinks fit, and

(b) may direct the manner in which, and the property from which, any monies authorised to be expended, and the costs of any transaction, are to be paid or borne.

**Charitable and non-charitable trusts – "cy-près".**

**59.** Where trust property is held for a charitable or non-charitable purpose and –

(a) the purpose has been, as far as may be, fulfilled,

(b) the purpose cannot be carried out, or not according to the directions given and to the spirit of the gift,

(c) the purpose provides a use for part only of the property,

(d) the property, and other property applicable for a similar purpose, can be more effectively used in conjunction, and to that end can suitably, regard being had to the spirit of the gift, be applied to a common purpose,

(e) the purpose was laid down by reference to –

(i) an area which was then, but has since ceased to be, a unit for some other purpose, or

(ii) a class of persons or to an area which has for any reason since ceased to be –

(A) suitable, , or

(B) practicable in administering the gift,

regard being had to the spirit of the gift,

(f) the purpose has been adequately provided for by other means,

(g) in the case of a charitable purpose, the purpose has ceased to be charitable (by being useless or harmful to the community or otherwise), or

(h) the purpose has ceased in any other way to provide a suitable and effective method of using the property, regard being had to the spirit of the gift,

the property, or the remainder of the property, as the case may be, shall be held for such other charitable or non-charitable purpose as the Royal Court, on the application of –

(i) Her Majesty's Procureur,

(ii) the trustees, or

(iii) in the case of a non-charitable purpose, the enforcer,

may declare to be consistent with the original intention of the settlor.

**General power to vary.**

**60.** (1) Where trust property is held for a charitable or non-charitable purpose, the Royal Court, on the application of Her Majesty's Procureur or the trustees, may approve any arrangement which varies or revokes the purposes or the terms of the trust or enlarges or modifies the powers of management or administration of the trustees, if it is satisfied that the arrangement –

(a) is now suitable or expedient, and

(b) is consistent with the original intention of the settlor and the spirit of the gift.

(2) The Royal Court may dispense with the consideration set out in subsection (1)(b) if satisfied that the original intention of the settlor cannot be ascertained.

(3) The Royal Court shall not approve an arrangement under subsection (1) unless satisfied that any person with a material interest in the trust has had an opportunity of being heard.

**Trusts created by Order in Council.**

**61.** Sections 57 to 60 do not apply to trusts created by an Order in Council of Her Majesty.

**Judgment against trustee to be binding on beneficiaries.**

**62.** (1) Any order, judgment or finding of law or fact of the Royal Court in an action against a trustee founded on breach of trust is binding on all beneficiaries of the trust, whether or not yet ascertained or in existence, and whether or not minors or persons under legal disability.

(2) Subsection (1) applies in respect of a beneficiary only if –

(a) he was represented in the proceedings (whether personally, or by his guardian, or as the member of a class, or otherwise), or

(b) if not so represented, he had notice of the proceedings and a reasonable opportunity of being heard.

**"Notice"** in paragraph (b) means 14 days' notice or such other period as the Court may direct.

(3) This section is without prejudice to the powers of the Royal Court in respect of representative proceedings and class actions.

**Settlement of action against trustee by alternative dispute resolution to be**

**binding on beneficiaries.**

**63.** (1) Where –

(a) the terms of a trust direct or authorise, or the Court so orders, that any claim against a trustee founded on breach of trust may be referred to alternative dispute resolution (**"ADR"**),

(b) such a claim arises and, in accordance with the terms of the trust or the Court's order, is referred to ADR, and

(c) the ADR results in a settlement of the claim which is recorded in a document signed by or on behalf of all parties,

the settlement is binding on all beneficiaries of the trust, whether or not yet ascertained or in existence, and whether or not minors or persons under legal disability.

(2) Subsection (1) applies in respect of a beneficiary only if –

(a) he was represented in the ADR proceedings (whether personally, or by his guardian, or as the member of a class, or otherwise), or

(b) if not so represented, he had notice of the ADR proceedings and a reasonable opportunity of being heard,

and only if, in the case of a beneficiary who is not yet ascertained or in existence, or who is a minor or person under legal disability, the person conducting the ADR proceedings certifies that he was independently represented by a person appointed for the purpose by a court of law.

**"Notice"** in paragraph (b) means 14 days' notice or such other period

as the person conducting the ADR proceedings may direct.

(3) A person who represents a beneficiary in the ADR proceedings for the purposes of subsection (2)(a) is under a duty of care to the beneficiary.

(4) For the avoidance of doubt, the ADR proceedings need not be conducted in Guernsey or in accordance with the procedural law of Guernsey.

(5) In this section –

**"ADR"** includes conciliation, mediation, early neutral evaluation, adjudication, expert determination and arbitration, and

**"proceedings"** includes oral and written proceedings.

PART III
PROVISIONS APPLICABLE ONLY TO FOREIGN TRUSTS

**Application of Part III.**

**64.** This Part of this Law applies only to a foreign trust.

**NOTE**

*The following case has referred to Part III:*

*Investec Trust (Guernsey) Limited at al v. Glenalla Properties Limited et al.* (2014) (Unreported, Court of Appeal, 27th June) (Guernsey Judgment No. 28/2014).

**Enforceability of foreign trusts.**

**65.** (1) Subject to subsection (2), a foreign trust is governed by, and shall be interpreted in accordance with, its proper law.

(2) A foreign trust is unenforceable in Guernsey to the extent that –

(a) it purports to do anything contrary to the law of Guernsey,

(b) it confers or imposes any right or function the exercise or discharge of which would be contrary to the law of Guernsey, or

(c) the Royal Court declares that it is immoral or contrary to public policy.

---

**NOTE**

*The following case has referred to section 65:*

*Investec v. Glenalla* (2013) (Unreported, Royal Court, 6th December) (Guernsey Judgment No. 38/2013).

---

PART IV

PROVISIONS OF GENERAL APPLICATION

**Application of Part IV.**

**66.** This Part of this Law applies to a Guernsey trust and, where the context admits, to a foreign trust.

---

**NOTE**

*The following case has referred to Part IV:*

*Investec Trust (Guernsey) Limited at al v. Glenalla Properties Limited et al.* (2014) (Unreported, Court of Appeal, 27th June) (Guernsey Judgment No. 28/2014).

---

**Rules of Royal Court.**

**67.** (1) The Royal Court sitting as a Full Court may by order make rules dealing with all procedural and incidental matters arising under this Law, and generally for carrying this Law into effect.

(2) Rules under subsection (1) may, without limitation, regulate

and prescribe –

(a) the procedure, including the method of pleading, and the practice to be followed in proceedings,

(b) the means by which matters may be proved, and

(c) the manner and the way in which evidence may be adduced.

**Applications for directions.**

**68.** A trustee may apply to the Royal Court for directions as to how he should or might act in any of the affairs of the trust, and the court may make such order as it thinks fit.

**General powers of court.**

**69.** (1) On the application of any person mentioned in subsection (2), the Royal Court may –

(a) make an order in respect of –

(i) the execution, administration or enforcement of a trust,

(ii) a trustee, including an order as to the exercise by a trustee of his functions, the removal of a trustee (if, for example, he refuses or is unfit to act, or he is incapable of acting or is bankrupt, or his property becomes liable to arrest, saisie, or similar process of law), the appointment, remuneration or conduct of a trustee, the keeping and submission of accounts, and the making of payments, whether into court or otherwise,

(iii) a beneficiary, or any person connected with a

trust,

(iv) any trust property, including an order as to the vesting, preservation, application, distribution, surrender or recovery thereof,

(v) an enforcer, in relation to any non-charitable purpose of a trust, including an order as to the exercise by an enforcer of his functions, the removal of an enforcer (if, for example, he refuses or is unfit to act, or he is incapable of acting or is bankrupt, or his property becomes liable to arrest, saisie, or similar process of law), and the appointment, remuneration or conduct of an enforcer,

(b) make a declaration as to the validity or enforceability of a trust,

(c) rescind or vary an order or declaration under this Law or make a new or further order or declaration.

(2) An application under subsection (1) may be made by –

(a) Her Majesty's Procureur,

(b) a trustee,

(c) a settlor,

(d) a beneficiary,

(e) a person described in section 32(2),

(f) in relation to a non-charitable purpose, the enforcer,

(g) with leave of the Royal Court, any other person.

(3) Where the Royal Court appoints or removes a trustee under this section –

(a) it may impose such requirements and conditions as it thinks fit, including requirements and conditions as to the vesting of trust property,

(b) subject to the court's order, a trustee appointed by the court has the same functions, and may act in all respects, as if he had been originally appointed a trustee.

---

**NOTE**

*The following cases have referred to section 69:*

*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011);
*Colour Trusts, Wilson and Monaghan v. Le Gallez* (2012) (Unreported, Royal Court, Ordinary Division, 24th May) (Guernsey Judgment No. 24/2012).

---

**Powers of court in event of default.**

**70.** If a person does not comply with an order of the Royal Court under this Law requiring him to do anything, the Royal Court may, on such terms and conditions as it thinks fit, order that the thing be done by another person, nominated for the purpose by the court, at the expense of the person in default (or otherwise as the court directs), and a thing so done has effect in all respects as if done by the person in default.

**Payment of costs.**

**71.** The Royal Court may order the costs and expenses of and incidental to an application to the court under this Law to be paid from the trust property or in such manner and by such persons as the court thinks fit.

**Nature of trustee's interest.**

**72.** (1) Subject to subsection (2) –

(a) the interest of a trustee in the trust property is limited to that which is necessary for the proper performance of the trust, and

(b) the trust property does not form part of the trustee's estate.

(2) Where a trustee of a trust is also a beneficiary thereof, subsection (1) does not apply to his interest as a beneficiary.

**Following trust property.**

**73.** With prejudice to the personal liability of a trustee, trust property which has been charged or dealt with in breach of trust, or the property into which it has been converted, may be followed and recovered unless –

(a) it is no longer identifiable, or

(b) it is in the hands of –

(i) a bona fide purchaser for value without notice of the breach of trust, or

(ii) a person (other than the trustee) who derived title through such a purchaser.

**Bankruptcy of trustees.**

**74.** Where a trustee becomes bankrupt, or upon his property becoming liable to arrest, saisie or similar process of law, his creditors have no recourse against the trust property except to the extent that the trustee himself has a claim against it or a beneficial interest in it.

**Protection for persons dealing with trustees.**

**75.** (1) A bona fide purchaser for value without notice of a breach of

trust –

(a) may deal with a trustee in relation to trust property as if the trustee were the beneficial owner thereof, and

(b) is not affected by the trusts on which the property is held.

(2) A person paying or advancing money to a trustee is not concerned to see –

(a) that the money is wanted,

(b) that no more than is wanted is raised, or

(c) that the transaction or the application of the money is proper.

**Limitation and prescription.**

**76.** (1) No period of limitation or prescription applies to an action brought against a trustee –

(a) in respect of any fraud to which the trustee was a party or was privy, or

(b) to recover from the trustee trust property or the proceeds thereof –

(i) held by or vested in him or otherwise in his possession or under his control, or

(ii) previously received by him and converted to his use.

(2) Subject to subsections (1) and (3), the period within which an action founded on breach of trust may be brought against a trustee is –

(a) three years from the date on which the claimant first has knowledge of the breach, or

(b) where the claimant was at the time of the breach of trust a minor or a person under legal disability –

(i) three years from the date on which his guardian first has knowledge of the breach, or

(ii) three years from the date on which the claimant ceased to be a minor or a person under legal disability,

whichever first occurs.

(3) Subject to subsection (1), no action founded on breach of trust may be brought against a trustee after the expiration of 18 years immediately following the date of the breach.

---

**NOTE**

*The following cases have referred to section 76:*

*Jefcoate & Jefcoate v. Spread Trustee Company Limited et al.* (2013) (Unreported, Royal Court, 17th April) (Guernsey Judgment No. 11/2013);

*Broadhead v. Spread Trustee Company Limited et al.* (2014) (Unreported, Royal Court, 26th November) (Guernsey Judgment 46/2014).

---

**Constructive trusts.**

**77.** (1) A person who derives a profit from a breach of trust, or who obtains property in breach of trust, shall be deemed to be a trustee of the profit or property unless he derives or obtains it in good faith without notice of the breach of trust.

(2) A person who becomes a trustee by virtue of subsection (1) shall deliver up the profit or property to the person properly entitled to it.

(3) This section does not exclude any other circumstances in which a constructive trust may arise.

PART V
SUPPLEMENTAL

**Application of Law.**

**78.** Subject to section 83, and except where provision to the contrary is made, this Law applies to trusts created before or after the commencement of this Law.

**Constitution of Royal Court.**

**79.** For the purposes of this Law the Royal Court may be properly constituted by the Bailiff sitting unaccompanied by the Jurats.

**NOTES**

*The following cases have referred to section 79:*

*In re the NAO Settlement* (2010) (Unreported, Royal Court, 29th November) (Guernsey Judgment No. 40/2010);
*Rothschild Trust Guernsey Limited and Adamantios (Diamantis) Pateras & Katigko-Kalliopi* (2011) (Unreported, Royal Court, 3rd May) (Guernsey Judgment No. 15/2011).

*In accordance with the provisions of the Deputy Bailiff (Guernsey) Law, 1969, section 5(4), with effect from 9th September, 1969, in the event of the Deputy Bailiff discharging any functions or exercising any powers appertaining to the office of Bailiff which he is authorised to discharge or exercise under or by virtue of the 1969 Law, the provisions contained herein relating to the discharge of such functions or the exercise of such powers shall have effect as if the reference herein to the Bailiff included a reference to the Deputy Bailiff.*

**Interpretation.**

**80.** (1) In this Law, unless the context otherwise requires –

**"bankrupt"**, in relation to –

(a) an individual, includes an individual –

(i) whose affairs have been declared in a state of "désastre" by his arresting creditors at a meeting held before a Commissioner of the Royal Court, the Court of Alderney or the Court of the Seneschal,

(ii) against whom an interim vesting order has been made in respect of any real property in the Bailiwick,

(iii) in respect of whom a declaration of insolvency has been made under the Loi ayant rapport aux Débiteurs et à la Renonciation, 1929[d],

(b) a corporation, includes a corporation –

(i) in respect of which a liquidator (provisional or otherwise) has been appointed or which (otherwise than for the sole purpose of solvent amalgamation, solvent reconstruction or solvent winding-up) has passed a special resolution requiring it to be wound up voluntarily, or

(ii) which is otherwise insolvent,

and **"bankruptcy"** shall be construed accordingly,

**"beneficiary"** means a person entitled to benefit under a trust or in whose favour a power to distribute trust property may be exercised,

**"breach of trust"** means a breach of any duty imposed on a trustee by this Law or by the terms of the trust,

---

[d] Ordres en Conseil Vol. VIII, p. 310.

**"corporate trustee"** means a trustee which is a corporation,

**"corporation"** means a body corporate wherever incorporated,

**"disposition"** includes any means by which property or any interest therein is created, transferred, dealt with, extinguished or charged, and related expressions shall be construed accordingly,

**"enforcer"**: see section 12,

**"foreign heirship right"** means any right, claim or interest arising under the law of a jurisdiction other than Guernsey in, against or to the property of any person arising, accruing or existing in consequence of, or in anticipation of, that person's death, other than a right, claim or interest created by will or expressed in any other voluntary disposition by that person or resulting from an express limitation in the disposition of the property to that person,

**"foreign trust"** means a trust the proper law of which is not the law of Guernsey,

**"formalities"**, in relation to a disposition of property, means the documentary and other actions required generally by the law of the jurisdiction in question for any such disposition of any such property, without regard to –

(a) the fact that the particular disposition is made in trust,

(b) the terms of the trust,

(c) the circumstances of the parties to the disposition, or

(d) any other particular circumstances,

but includes any special formalities required by reason of the party effecting

the disposition being a minor, a person under legal disability or a corporation,

**"functions"** includes rights, powers, discretions, obligations, liabilities and duties,

**"guardian"**, in relation to a minor, includes a parent,

**"Guernsey trust"** means a trust the proper law of which is the law of Guernsey,

**"he"**, **"him"** and **"his"**, in relation to a corporation, include **"it"** and **"its"**,

**"Her Majesty's Procureur"** includes Her Majesty's Comptroller,

**"insurance"** includes assurance,

**"instrument in writing"** means any executed document including, for the avoidance of doubt, a will or codicil,

**"interest"**, in relation to a beneficiary, means his interest under a trust,

**"letter of wishes"** : see section 38(2),

**"marriage"** includes any formal arrangement howsoever described between two people, regardless of gender, pursuant to which the law of any jurisdiction confers or imposes rights, claims, interests, obligations, liabilities or duties analogous to those of husband or wife,

**"minor"** means, subject to the terms of the trust, a person who has not attained the age of 18 years,

**"personal relationship"** includes every form of relationship by blood, adoption, marriage or cohabitation regardless of whether the law of

any jurisdiction recognises the validity, legitimacy or existence of the relationship, and includes a former personal relationship which has in law or in fact terminated.

A personal relationship also exists between two persons if a personal relationship exists between each of them and a third person,

**"personal representative"** means the executor or administrator of the estate of a deceased person,

**"profit"** includes gain or advantage,

**"property"** –

(a) means real and personal property of any description, wherever situated, and any share, right or interest therein, and includes tangible or intangible property and any debt or thing in action,

(b) in relation to rights and interests, includes rights and interests whether vested, contingent, defeasible or future,

**"provisions of this Law"** includes the provisions of any Ordinance hereunder,

**"Public Trustee"** means the Public Trustee appointed under section 1 of the Public Trustee (Bailiwick of Guernsey) Law, 2002[e],

**"purpose"** means any purpose whatsoever, whether or not involving the conferral of any benefit on any person, and includes, without limitation, the holding or ownership of property and the exercise of functions,

**"Royal Court"** means the Royal Court sitting as an Ordinary Court,

---

e No. III of 2003.

constituted in accordance with section 78,

**"settlor"** means a person who directly or indirectly provides trust property or makes a testamentary disposition on trust or to a trust,

**"States"** means the States of Guernsey,

**"terms of a trust"** means the written or oral terms of a trust and any other terms applicable under its proper law,

**"third party"** means a person other than a settlor, trustee, enforcer, trust official or beneficiary,

**"trust"** includes –

(a) the trust property, and

(b) the functions, interests and relationships under a trust,

**"trustee"** has the meaning given by section 1, and includes a corporate trustee and the Public Trustee when acting as trustee pursuant to the provisions of the Public Trustee (Bailiwick of Guernsey) Law, 2002,

**"trust official"** means a person having a function or holding an office in respect of the trust other than a settlor, trustee, enforcer or beneficiary,

**"trust property"** means property held on trust,

**"unit trust"** means a trust established for the purpose, or having the effect, of providing, for persons having funds available for investment, facilities for the participation by them as beneficiaries under the trust in any profits or incoming arising from the acquisition, holding, management or disposal of property.

(2) For the purposes of this Law, a corporation is resident in the place in which it has its registered office.

(3) Any reference in this Law to an enactment is a reference thereto as from time to time amended, re-enacted (with or without modification), extended or applied.

**Power to amend Law by Ordinance.**

**81.** (1) The States may by Ordinance amend this Law.

(2) An Ordinance under this section may, for the avoidance of doubt, repeal, replace, amend, extend, adapt, modify or disapply any rule of customary or common law.

**General provisions as to subordinate legislation.**

**82.** (1) An Ordinance or rule under this Law –

(a) may be amended or repealed by a subsequent Ordinance or rule, as the case may be, hereunder, and

(b) may contain such consequential, incidental, supplementary and transitional provision as may appear to be necessary or expedient including, in the case of an Ordinance, provision amending any enactment.

(2) Any power conferred by this Law to make an Ordinance or rule may be exercised –

(a) in relation to all cases to which the power extends, or in relation to all those cases subject to specified exceptions, or in relation to any specified cases or classes of cases,

(b) so as to make, as respects the cases in relation to which it is exercised –

(i) the full provision to which the power extends,

or any lesser provision (whether by way of exception or otherwise),

(ii) the same provision for all cases, or different provision for different cases or classes of cases, or different provision for the same class of case for different purposes,

(iii) any such provision either unconditionally or subject to any prescribed conditions.

**Repeals and transitional provisions.**

**83.** (1) The following enactments are repealed –

(a) the Trusts (Guernsey) Law, 1989[f],

(b) the Trusts (Amendment) (Guernsey) Law, 1990[g], and

(c) section 25(1) of the Public Trustee (Bailiwick of Guernsey) Law, 2003[h].

(2) Anything done before the date of commencement of this Law or in the process of being done on that date under the Trusts (Guernsey) Law, 1989 which could be done under this Law shall have effect as if done or, as the case may be, may be continued under this Law.

(3) For the avoidance of doubt, a director or former director of a corporate trustee shall not, after the date of commencement of this Law, be under any duty, obligation or liability as guarantor by virtue of section 70 of the Trusts (Guernsey) Law, 1989 except by virtue of any proceedings instituted prior to that date against the trustee in respect of a breach of trust committed by the trustee.

---

f Ordres en Conseil Vol. XXXI, p. 217.
g Ordres en Conseil Vol. XXXII, p. 385.
h Order in Council No. III of 2003.

(4) Any reference, however expressed, in –

(a) any enactment, statutory instrument or rule of court, or

(b) any trust instrument, will, settlement or other instrument of whatever nature,

to the Trusts (Guernsey) Law, 1989 or any provision of that Law shall, unless the contrary intention appears, be construed after the date of commencement of this Law as a reference to this Law or, as the case may be, to the corresponding provision of this Law.

**Savings.**

**84.** (1) Nothing in this Law –

(a) affects the functions under any provision of law of Her Majesty's Sheriff or of any guardian or attorney,

(b) subject to section 14, validates an otherwise invalid disposition of property to a trust,

(c) affects the validity of anything done in relation to a trust before the commencement of this Law,

(d) affects the validity of a trust arising from a document or disposition executed or taking effect before the commencement of this Law,

(e) derogates from any right of a minor to repudiate a transaction on attaining full age,

(f) disapplies or derogates from any rule of law or custom relating to the formalities required for the disposition of real property in Guernsey.

(2) Nothing in this Law derogates from the powers of the Royal Court which exist independently of this Law –

(a) to set aside, vary or reduce any transfer or other disposition of property, testamentary or otherwise,

(b) in respect of trusts, trustees or trust property,

(c) to make an order relating to matrimonial proceedings,

(d) to make an order relating to the avoidance of fraud on creditors.

(3) Nothing in this Law derogates from the provisions of –

(a) article 29 of the Law entitled "Loi sur les Successions, 1840"[i],

(b) the Law entitled "Loi supplémentaire à la Loi des Successions, 1890"[j],

(c) section 12 of the Married Women's Property Law, 1928[k].

(4) Nothing in this Law affects a personal representative acting as such.

(5) No transfer or disposition of property to a trust is invalidated by application of the principle of "donner et retenir ne vaut".

---

i Ordres en Conseil Vol. I, p. 51, Vol. II p. 59

j Ordres en Conseil Vol. II, p. 323.

k Ordres en Conseil Vol. VIII, p. 213.

**NOTES**

*In accordance with the provisions of the Law Reform (Age of Majority and Guardianship of Minors) (Guernsey) Law, 1978, section 1(1) and section 1(2), with effect from 1st July, 1978 and subject to the saving provision in section 1(6) of the 1978 Law, a person shall attain full age on attaining the age of eighteen instead of on attaining the age of twenty and the reference in this section to "full age" shall be construed accordingly.*

*The Loi supplémentaire à la Loi des Successions, 1890 has since been repealed by the Inheritance (Guernsey) Law, 2011, section 2(a), with effect from 2nd April, 2012.*

**Citation.**

**85.** This Law may be cited as the Trusts (Guernsey) Law, 2007.

**Commencement.**

**86.** This Law shall come into operation on the 28th day after the date of its registration on the records of the Island of Guernsey.

**NOTE**

*The Law was registered on the Records of the Island of Guernsey on 18th February, 2008.*

# Exhibit 4

**Judgment 35/2012**

**In Re B**
**Court of Appeal**
**Civil Division**
**11th July 2012**

---

**Disclosure of information on a Guernsey trust to the French authorities in connection with a criminal investigation.**

Anonymised Final Judgment
31 July 2012

**IN THE COURT OF APPEAL OF GUERNSEY**
**(CIVIL DIVISION)**
**APPEAL NO. 420**

**ON APPEAL FROM THE ROYAL COURT SITTING AS AN ORDINARY COURT**

**Before:**

**Sir John Nutting Bt QC, President**
**Nigel Pleming QC**
**Sir Michael Birt, Bailiff of Jersey**

**And in the matter of:**

**"RE B"**

**Hearing dates 9th and 10th July 2012**

**Date of decision 11th July 2012**

**Advocate Andrew Laws for the Appellant**
**Advocate Russell Clark for the Respondent**
**Crown Advocate Frederic Raffray for HM Procureur**

© Royal Court of Guernsey

**Cases and texts referred to in the judgment: -**

| Cases and texts |
|---|
| European Convention on Mutual Assistance in Criminal Matters 1959 |
| Criminal Justice (International Co-operation) (Bailiwick of Guernsey) Law, 2001 as amended |
| Trusts (Guernsey) Law, 2007 as amended |
| Criminal Justice (Fraud Investigation) (Bailiwick of Guernsey) Law, 1991 |
| Criminal Justice (Proceeds of Crime) (Bailiwick of Guernsey) Law, 1999 |
| Underhill and Hayton Law of Trusts and Trustees 17th Ed |
| *Irish Permanent Building Society -v- Farrell, Montoire Limited Intervening* (Judgement 1993/41) |
| *Viscount -v- The Attorney-General* [2002] JLR 268 |
| *In Re The Intermine and the Azalia Trusts* [2006] JLR 195 |
| *Attorney General -v- Guardian Newspapers Limited (2)* [1990] 1 AC 109 |
| *Tournier -v- National Provincial and Union Bank of England* [1925] 1 KB 46 |
| *Re a New York Bank* [1983] E.C.C. 342 |

**Additional cases and texts referred to by the parties: -**

| Cases and texts |
|---|
| *Attorney-General v Observer Ltd (No.2) [1990] 1 AC 109* |
| *British Steel Corporation v Granada Television Limited [1981] AC 1096* |
| *Morgan Stanley International -v- Consentino AP, Banque Belge (Guernsey) Limited Intervening* [1992/40] |
| *In the Matter of the Representations of McMahon and Probets* [1924] 1 KB 46 |
| *Barclays Bank plc -v- Taylor* [1989] 1 WLR 1066 |
| *Canadian Imperial Bank of Commerce -v- Sayani* [1991] CanLII 671. |
| *Royal Bank of Canada -v- Vincenzi* [1994] CanLII 1823 |
| *Sunderland -v- Barclays Bank Limited* [1938] 5 L.D.A.B. 163 |
| *Emmott -v- Mitchell Wilson and Partners Limited* [2008] EWCA Civ 184 |
| *Pharaon and Others -v- Bank of Credit and Commerce International S.A. (in liquidation)* [1998] 4 A11 ER 455 |
| *R -v- Grossman* [1981] 73 Cr AP R. |
| *Commissioner of the Police -v- Times Newspapers* [2011] EWHC 2705 |
| *X -v- A* [2000] 1 A11 ER 490 |
| *Re Lord Cable* [1977] 1 W.L.R. 7. |
| *Re Reid* (1970) 17 D.L.R (3d) (199) |

© Royal Court of Guernsey

Pleming, J.A., delivering the judgment of the Court

**Introduction**

1.  This is an appeal, with the leave of Sir de Vic Carey JA, from the decision of Judge J R Finch on 15th March 2012, when he made the following order:

    > *"The Respondent and/or its employees, representatives, agents, officers or directors be at liberty to disclose any information of whatever nature, whether orally, or in written form, or any document, relating to the Trusts to the law enforcement authorities of the Republic of France, as the Respondent reasonably considers necessary or desirable to protect the interests of the beneficiaries of the Trust, to secure the preservation of the trust property or to protect the interests of the Respondent personally in the context of an on-going criminal investigation in that country apparently commenced pursuant to charges brought by a French Prosecutor* [on specified dates] *and including but not limited to a summons issued to the Respondent by* [a named investigating magistrate ("**the French Judge**")]*which requires the Respondent to appear in the District Court of Paris* [on a specified date] *for an oral examination."*

2.  The appeal is supported by a Notice of Appeal dated 4th May 2012. As noted by the learned judge in his judgment he was placed under considerable time pressures because the court hearing in Paris was due to take place two days after the conclusion of oral submissions. Notwithstanding the time pressures the judge produced a very helpful judgment explaining the basis upon which he concluded that the application should be dismissed, and the cross-application allowed.

3.  Since the case was before the judge there have been some factual developments and on 8th June 2012 Sir de Vic Carey, sitting as a single judge of the Court of Appeal, allowed the parties to rely on four affidavits of expert evidence and on a second, lengthy, affidavit from a director of T ("**X**"). We have therefore had the opportunity to consider not only the material placed before the judge, but also extensive additional evidence such that the proceedings have in effect been conducted as a *de novo* hearing.

**Factual background and chronology**

4.  Although we have been provided with several hundred pages of evidence and exhibits, the broad factual background does not appear to be in dispute, and is here briefly summarised from the skeleton arguments and from the affidavit evidence.

5.  The Respondent, a subsidiary of an international banking group, is trustee of two trusts created in February 1989 for the benefit of the sons and grandchildren of the Settlor ("**S**"). The First Trust (set up principally for the benefit of the children of S) was created by settlement made between S as settlor and S and a Caribbean corporate trustee as trustee. The

Second Trust (set up principally for the benefit of the grandchildren) was created by settlement between the same parties on the same date. The Settlor died in 2001.

6. The terms of the Trusts are described in some detail in the second affidavit of X, and the assets listed. The only real estate asset of which we are aware specifically identified as being in France is a half interest in an agricultural property, owned indirectly by the First Trust through company shareholding. There is also an interest in [other non-real estate assets] in France. It is not necessary here to list the other assets, but it is to be noted that they are substantial in value. The Trusts are administered by the trustee, but the interests of the beneficiaries are also protected by a Protector (now "P") and the Family Advisory Committee.

7. A Guernsey based corporate trustee was appointed co-trustee in place of the original Caribbean corporate trustee in 1990. At the same time the proper law of the Trusts was changed to the law of Guernsey. The original Guernsey trustee was replaced by the Respondent in 1999. The Respondent has been trustee of the Trusts since 1999.

8. The Appellant is a granddaughter of the Settlor and a beneficiary of both of the Trusts. She has never benefited from either trust. She explains in her affidavit that she is “concerned that should a representative of [the Respondent] attend the hearing… information regarding the Trusts may be disclosed. It is my position that the duty of confidentiality that [the Respondent], as the Trustee, owes to the Beneficiaries, including myself, overrides any right that the trustee may have to disclose such information in order to defend itself, even in criminal proceedings."

9. As noted above, the Settlor died in 2001. Shortly after his death his widow is said to have waived her entitlement to any interest in the Settlor’s estate. The widow later sought to challenge the waiver and civil proceedings were commenced. In 2005 a French court in these, or related, proceedings ordered the initiation of procedures to account for, liquidate and divide up the joint marital assets existing between the Settlor and his widow, and also the estate of the Settlor, commissioned a notary with the task of drawing up a draft division of the personal property and real property, and appointed an expert with the task of appraising the value of all tangible assets. This description is taken from paragraph 61of the second affidavit of X.

10. Civil proceedings continued in France over the following years and in April 2010 criminal investigations in the French courts concerning the Trusts were initiated by the Settlor's widow and, in 2010, the French Judge was appointed as an investigating magistrate, or “*Juge d’Instruction*” – his formal title is “Deputy Chief Judge in charge of the investigation”

11. The Settlor's widow died later in 2010 and we are informed that her civil claims were extinguished on her death but her criminal complaint continued. It would appear that the widow of one of the Settlor's sons joined the criminal proceedings as a complainant.

12. In addition to the criminal proceedings referred to above X also discloses that there have been tax investigations in France and, following an amendment to the French tax code pursuant to changes in tax law in July 2011, disclosure obligations are now imposed on trustees. These provisions came into force in January 2012 and are the subject of some dispute in the expert evidence but it seems to us reasonably clear that a trustee is under a duty to make disclosure of the market value of any real estate interests held by the trust in France (referred to as Wealth Tax French Assets) with failure to report leading to financial penalties.

13. In 2011 P, the Protector of the Trusts, was summonsed to appear as a witness in France in relation to the criminal proceedings and had been asked to provide the French Judge with copies of the trust deeds and trust accounts. Apparently P was questioned by the French Judge in early 2011 but he did not take documents with him and refused to answer questions which would have been in conflict with his obligation of professional secrecy as a Swiss lawyer.

14. On 19th January 2012, as a "bolt out of the blue" according to X, the Respondent received a summons from the French Judge requiring the appearance of the Respondent at a pre-indictment hearing on 16th March 2012. Although the summons was received in January it was not served in accordance with Guernsey law until 7th March 2012 - see below. The effect of the Summons was to inform the Respondent that the French Judge was contemplating placing the Respondent under judicial investigation concerning criminal offences which have been translated as "possession of stolen goods and complicity in tax evasion", and "aggravated laundering". The relevant substantive parts of the Summons (translated) are as follows:

> "possession of stolen goods and complicity in tax evasion"
>
> "*For having aided and abetted and concealed, in Guernsey beginning in 2007, the tax evasion committed in Paris by the heirs of* [S], *consisting in deliberately concealing a portion of the sums subject to French estate tax*,[the Summons then specified certain assets] *held by* [the First Trust and the Second Trust], *of which* [the Respondent] *is the trustee.*
>
> *Deeds governed by and punishable under Articles 121-2, 121-6, 121-7, 321-1, 321-3, 321-12 of the Criminal Code and Articles 1741 and 1745 of the General Tax Code,"*

and

> "aggravated laundering"

> *"For having aided and abetted, in Guernsey beginning in 2007, the operation of concealing and converting the direct proceeds of an offence which procured a direct profit for* [S's] *heirs, by having accepted to falsely qualify as loans distributions of income or capital to the […]heirs,*
> *Laundering committed by using the opportunities resulting from the carrying out of a professional activity, in this instance that of a trustee.*
>
> *Deeds governed by and punishable under Articles 121-2, 324-1, 324-2, 324-3, 324-9 of the Criminal Code".*

15. The introductory words of the Summons are also relevant and important:

> "Pursuant to Article 80-2 of the Code of Criminal Procedure, I hereby inform you that I am convening you for the purpose of conducting your oral examination at the time of your first appearance, in an investigation initiated pursuant to the French Prosecutor's charges of [specified dates were given]."

16. The following is a translation of Article 80.2 agreed by the parties:

> "The investigating magistrate may inform a person by registered letter that such person is summoned to appear within a timeframe which may not be less than 10 days nor more than two months so that such person may be heard for the first time ("*première comparution*") in the conditions set forth by article 116. Such letter shall mention the date and time of the hearing. It shall inform the person about the facts on which the magistrate has been designated to investigate and for which an indictment ("*mise en examen*") is contemplated, while mentioning their legal qualification. It shall inform the person that he/she/it is entitled to appoint an "avocat" or to request that such an avocat is designated "d'office" (by the Bar), such choice or request having to be mentioned to the investigating magistrate's greffier. It shall provide that the indictment may only take place at the end of the first hearing of the person before the investigating magistrate. The investigating magistrate may also have the summons served by a police officer. Such summons shall stipulate the details mentioned in the preceding paragraph; such summons shall be acknowledged by way of a formal acknowledgement of receipt ("*process-verbal*") signed by the person who receives a copy of the summons. The avocat who is appointed or designated is summoned in the conditions provided by article 114; he/she is given access to the criminal file within the conditions set forth by such article"

17. It is common ground that the Summons makes it clear that the Respondent is under investigation for serious criminal offences including the first charge "*recel*" which is concealing, keeping or transferring a thing or acting as an intermediary in order to transfer a thing knowing that this thing results from a felony or an offence. If convicted the Respondent could be punished with up to five years imprisonment and a fine of €375,000 or half the value of the goods held by "*recel*". In relation to second charge, the accusation of money laundering under French law ("investing, concealing or converting the direct or indirect product of a felony or an offence"), the potential punishment is again up to five years imprisonment and a fine of €375,000. Where money laundering is committed using the facilities offered by the exercise of a professional activity the penalty is increased to 10 years imprisonment and a fine of €750,000 or half the value of the monies said to be laundered. The alleged crimes require a criminal intent or (in relation to *recel*) bad faith. It is apparent that

the French Judge may be intending to invoke the enhanced penalty in relation to the Respondent.

18.     On any view these are serious allegations, carrying a risk of severe penalties.  As set out in the first affidavit of X the Respondent "denies absolutely that it has had any involvement in aiding or concealing any person's tax evasion nor has the Respondent sought to conceal or convert the direct proceeds of an offence committed by the heirs of the Settlor. It has done nothing other than discharge its enforceable duties as trustees."  The experts on French criminal law instructed by the parties agree, on the basis of the facts presented to them, that there is no basis for criminal liability to attach to the Respondent.  However, there is no evidence before this Court to suggest that the French Judge shares this view.  Indeed, we are informed (and this does not appear to be disputed by the Appellant) not only that the criminal investigation in France is continuing, but that in April 2012, as a result of the Respondent failing to provide information, the French Judge said that he proposed to issue an arrest warrant against X as legal representative of the Respondent. This accords with the views of the French law experts that there is a possibility that regardless of what is actually provided to the Judge he may still place the Respondent *"mise en examen"* in any event.  The French legal expert for the Respondent summarises the position as follows:

> "17. As long as the Respondent is prevented by order of this Court from answering the questions that [the French Judge] wishes to pose in connection with the offences mentioned in the Summons, in a transparent and open manner, including if necessary disclosing the assets of and activities undertaken with the Trusts, we confirm our advice is that there is a very strong risk that the Respondent will be charged (*mise en examen*) with the offences referenced in the Summons.
>
> 18.  In my opinion, this risk exists whether or not the Respondent appears before [the French Judge]."

19.     In an email dated 1st March 2012 to the Respondent's Guernsey advocates, the French Judge said:

> "If your client appears, I will hear him and at the end of the hearing I will decide whether I notify him charges or not ('mise en examen', sort of pre indictment).
>
> If your client does not appear, I shall issue an application to the President of the Tribunal de Grande Instance de Paris (District Court), who can appoint a (French) judicial agent to represent your client for his appearance (article 706-43 in fine of Code procédure pénale). I would then summon this judicial agent and proceed as explained above."

20.     As far as we are aware an arrest warrant has not yet been issued, which (we are told) would require the consent of the Procureur in France, nor has a European Arrest Warrant been

issued. But it appears to be common ground that there remains a real risk this may happen, and happen soon.

21. When she became aware of the Summons, the Appellant commenced these proceedings seeking an order under section 69 of the Trusts (Guernsey) Law 2007, in summary, to prevent the Respondent disclosing any information relating to the Trusts without the leave of the Court. The Respondent, in turn, applied for an order (again in summary) that the Respondent be at liberty to disclose Trust information in response to the Summons from the French Court.

22. As already stated the matter came before Judge Finch at extremely short notice and he made the order described in paragraph 1 permitting the Respondent to attend before the French Judge.

**International mutual assistance in criminal matters**

23. In 1959 the European Convention on Mutual Assistance in Criminal Matters was signed in Strasbourg, (the "1959 Treaty"). It provides for the use of letters rogatory for the purpose of procuring evidence and obtaining articles (Chapter II, Articles 3 to 6), and the service of writs and records of judicial verdicts in relation to the appearance of witnesses, experts and "prosecuted persons" (Chapter III, Article 7 to 12). France is a signatory.

24. The 1959 Treaty was extended to the Bailiwick of Guernsey by declaration of the United Kingdom government dated 27th September 2002 with effect from 20th January 2003.

25. In Guernsey neither the First Protocol (in 1978) nor the Second Protocol (in 2000) to the 1959 Treaty have been extended to the Bailiwick and there are no requests that either be extended here. In this regard the position in Jersey is different where the First Protocol has apparently applied since October 2008.

26. Local implementation of the 1959 Treaty took place in 2001 with the enactment of the Criminal Justice (International Co-operation) (Bailiwick of Guernsey) Law ("the 2001 Law"). Section 1(1)(a) provides for the service of overseas process where Her Majesty's Procureur receives from the government of, or other authority in, a country or territory outside the Bailiwick "a summons or other process requiring a person to appear as defendant or attend as witness in criminal proceedings in that country or territory".

27. Section 4 of the 2001 Law addresses "Bailiwick evidence for use overseas", where there is a request from a court or tribunal, or prosecuting authority, in a country or territory outside the

Bailiwick for assistance in obtaining evidence in the Bailiwick "in connection with criminal proceedings that have been instituted, or a criminal investigation that is being carried on, in that country or territory".

28. As this appeal raised consideration of the Bailiwick's approach to international cooperation and, thereby, the public interest in Guernsey we invited the Procureur to make submissions to the Court. We were provided with an unsworn affidavit from the Procureur which confirms that the Summons was duly received by his office on 5th March 2012 and acknowledged the following day by a Notice of Service of Overseas Process under the 2001 Law. As a result of representations from Advocate Clark on behalf of the Respondent, the Procureur and Crown Advocate Raffray acting on his behalf were in contact with the French Judge inviting him, if necessary, to avail himself of Guernsey's international cooperation powers. We are informed that no formal request for mutual legal assistance has been received from the French Judge, other than the original request to serve the Summons.

29. Crown Advocate Raffray made brief oral submissions to us on behalf of the Procureur to the effect that, in this case, it was a matter for the French Judge as to how he pursued his investigation, as long as local substantive and procedural law was followed. There was no evidence put before the Procureur to show or support an argument that the French Judge had failed to comply with French law, or that there had been any absence of good faith. In those circumstances it was a decision for the investigating magistrate as to whether or not a Summons was issued.

**The law of confidentiality**

30. Neither the terms of the Trusts nor the applicable statute law (the Trusts (Guernsey) Law, 2007) contain restrictions or permissions in relation to the disclosure of trust information. The Trusts do not give the Protector of the Trusts or the Family Advisory Committee, or any beneficiary, any veto over disclosure.

31. However, it is common ground that the position of trustee carries with it a duty to keep the affairs of the trust confidential. Both parties refer to *Underhill and Hayton, Law of Trusts and Trustees* (at Paragraph 60.31);

> "*As a general proposition, trustees must keep the affairs of the trust confidential, such as personal information relating to the beneficiaries, as part of the law relating to breach of confidence.*"

32.     We have not been referred to any Guernsey authority which specifically holds that a trustee is under a duty of confidentiality in respect of the affairs of the trust.        In *Irish Permanent Building Society v Farrell* (Judgment 1993/41), Carey, Deputy Bailiff, stated:

> "*There are a great many companies in Guernsey engaged in fiduciary business and I think one can properly infer that generally such companies will owe a duty of confidentiality to their clients, just as an advocate or accountant does*".

That case was concerned with a company used as a vehicle for pooling deposits; it did not involve the trustee of a trust.   Nevertheless, the observations of Carey, DB are of some assistance by way of analogy.

33.     The position has been touched upon by the Jersey courts.  In *Viscount  v Attorney General* 2002 JLR 268, Birt DB said at para 21:-

> "*A trust company owes a duty of confidentiality to its clients in respect of their affairs.  Thus a settlor or beneficiary of a trust or a beneficial owner of a company who communicates with the trust company which administers his structure is entitled to expect that the trust company will not disclose such communications voluntarily.  The duty is akin to the duty of confidentiality owed by a banker*".

34.     In *Re The Internine and the Azalia Trusts* 2006 JLR 195, there was a common trustee of the two trusts in question.  The Jersey Court of Appeal had to consider whether, in the context of what it categorised as hostile litigation in respect of the Internine Trust, the trustee should be ordered to disclose certain documents which it held as trustee of the Azalia Trust, but which were said to be relevant to the dispute concerning the Internine Trust.  The issue which we are considering did not arise directly in the case, but at paragraph 30 and 31 of the judgment the Court said that it inclined to the view that there was no irrefutable presumption that all documents held by trustees for the purposes of the trust were confidential.  It considered that many would be but others would not.  The Court's judgment gives the example of ordinary contractual documents entered into by a trustee as documents which would not prima facie be confidential.  On the other hand it accepted that the circumstances in which a stranger to a trust could call for documents such as the trust deed, a letter of wishes etc. were likely to be very restricted.  It concluded that, in the context of discovery in hostile proceedings, each document had to be considered on its merits.

35.     The Jersey Court of Appeal was considering matters in a very specific context.  We are considering the matter more generally.  It seems to us that one cannot express a trustee's duty of confidentiality by reference to a particular document, so that some documents are defined as confidential and others are not.  Take the example of a contract for the provision of a carer for one of the beneficiaries.  In our judgment it is not possible to say in the abstract that that document is not confidential.  The legitimacy of any disclosure would depend upon the

circumstances. It would in our judgment be a breach of the trustee's duty to disclose such a document to, for example, the media, so that they could run a story about the beneficiary who is being cared for. On the other hand, disclosure of a copy of the contract to the contractor providing the carer, because the contractor had mislaid his own copy of the contract, would be entirely permissible as it would be disclosed for the purposes of administering the trust.

36.     We therefore prefer the view that there is a general duty of confidentiality upon a trustee in relation to the affairs of the trust, but that one of the qualifications to that duty is where disclosure is necessary in connection with the proper administration of the trust. We return to this topic below.

37.     The law relating to the duty to keep confidential information received in confidence is reasonably clear. Advocate Clark, for the Respondent, referred to *Attorney General –v- Guardian Newspapers Limited (No. 2)* [1990] 1 AC 109, at 281 where Lord Goff summarised the broad general principle of the duty of confidentiality as follows:

> "*A duty of confidence arises when confidential information comes to the knowledge of a person (the confident) in circumstances where he has notice, or is held to have agreed, that the information is confidential, with the effect that it would be just in all the circumstances that he should be precluded from disclosing the information to others …*
>
> *In the vast majority of cases … the duty of confidence will arise from a transaction or relationship between the parties … But it is well settled that a duty of confidence may arise in equity independently of such cases...*".

38.     It is clear that the duty of confidentially does not impose an absolute duty to stay secret and silent. As Lord Goff noted in the same case, at page 282C-F, there are three limiting principles:

1)     that the principle of confidentiality does not apply to information that is generally accessible;

2)     that the duty of confidence does not apply to information that is useless or trivial; and

3)     ("of far greater importance") in certain circumstances the public interest in maintaining confidence can be outweighed by the public interest in the information being disclosed.

39.     We accept that, in general terms, a trustee is under a duty to keep the affairs of the trust confidential. In many respects, this duty is akin to the duty of confidence owed by a bank in

relation to the affairs of its customer. However, the duty of a trustee is not identical to that of a bank. In the first place, it does not arise as a matter of contract. Furthermore, there will be many cases where a trustee has to disclose information concerning the trust and/or its beneficiaries for the very purpose of administering the trust e.g. in order to open a bank account or obtain a loan. However, in relation to the issue with which we are concerned in this case, we consider that the principles applicable in the case of a bank are equally applicable to a trustee. The duty, and its limits, of a bank are the same in Guernsey as in England and Wales and are set out in *Tournier –v- National Provincial and Union Bank of England* [1924] 1 KB 46, by Bankes LJ at 471:

> "*At the present day I think it may be asserted with confidence that the duty [of confidentiality] is a legal one arising out of contract, that the duty is not absolute but qualified. It is not possible to frame any exhaustive definition of the duty. The most that can be done is to classify the qualifications, and to indicate its limit …*
>
> *"On principle I think that the qualifications can be classified under four heads;*
>
> *(a) where disclosure is under compulsion by law;*
>
> *(b) where there is a duty to the public to disclose;*
>
> *(c) where the interests of the bank require disclosure;*
>
> *(d) where the disclosure is made by the express or implied consent of the customer*".

See, from the same decision, Scrutton LJ at page 480/481:

> *"The Court will only imply terms which must necessarily have been in the contemplation of the parties in making the contract. Applying this principle to such knowledge of life as a judge is allowed to have, I have no doubt that it is an implied term of a banker's contract with his customer that the banker shall not disclose the account, or transactions relating thereto, of his customer except in certain circumstances. This duty equally applies in certain other confidential relations, such as counsel or solicitor and client, or doctor and patient. The circumstances in which disclosure is allowed are sometimes difficult to state, especially in the case of a medical man; and I do not propose to do more than indicate the exceptions material to the present case. I think it is clear that the bank may disclose the customer's account and affairs to an extent reasonable and proper for its own protection, as in collecting or suing for an overdraft; or to an extent reasonable and proper for carrying on the business of the account, as in giving a reason for declining to honour cheques drawn or bills accepted by the customer, when there are insufficient assets; or when ordered to answer questions in the law Courts; or to prevent frauds or crimes.*

And Atkin LJ at page 486:

> *"It is difficult to hit upon a formula which will define the maximum of the obligation [not to divulge information] which must necessarily be implied. But I think it safe to say that the obligation not to disclose information such as I have*

*mentioned is subject to the qualification that the bank has the right to disclose such information when, and to the extent to which it is reasonably necessary, for the protection of the bank's interests, either as against their customer or as against third parties in respect of transactions of the bank or with their customer, or for protecting the bank, or persons interested, or the public, against fraud or crime".*

40. We therefore accept that the duty of confidentiality implied into the relationship of trustee and beneficiary is subject to the qualification that *"the [trustee] has the right to disclose such information when, and to the extent to which it is reasonably necessary, for the protection of the [trustee's] interest*".

**The test to be applied in the appeal**

41. Before Judge Finch, and (after some hesitation) before us, the parties accepted that the test to be applied was as set out by Leggatt J in *Re a New York Bank* [1983] E.C.C. 342. The relevant passages from the judgment are as follows:

> *"[15] There is no dispute that the bank is subject to a duty of confidentiality. Apparently the nature of the duty is no different in New York from the duty to which it is regarded as subject in London. For convenience, I would describe the duty as arising from an implied term of the contract governing the relationship of banker and customer and as being that, subject to certain qualifications which it may be material to consider, a banker shall not without the consent of the customer disclose to any other person any document or other information obtained by the banker in the course of that relationship.*
>
> *[16] There is no dispute that disclosure of the documents to the Grand Jury would constitute or create a breach of that duty. It would be so, as it appears from the evidence, not merely in the technical sense of the Grand Jury itself constituting a third person to whom disclosure of confidential documents would constitute a breach of that confidentiality, but also in the far wider and more material sense that, as it would appear, there is in practice no secrecy in relation to matters entrusted to Grand Juries.*
> *..*
> *[51] It seems to me that even if it be right to regard the exercise which has to be undertaken here ultimately as being a balancing exercise, it must involve an evaluation of the relevant order of the foreign court. It would be necessary for this court in particular to consider the nature, scope, quality and effect of the foreign order and to analyse it with some care, because the fact is that to allow that order to take effect upon a bank conducting its business in the City of London would be, as it would appear, to allow a fairly large cuckoo in the domestic nest. But I say `would be necessary' because the balance with which I am immediately concerned in this interlocutory matter is the balance of convenience and not the performance of that balancing act which Mr. Longmore has in mind."*

42. In summary, therefore, we are invited to proceed on the agreed basis that the confidentiality obligation is not absolute, and there is a balancing exercise to be carried out involving "*an evaluation of .... the nature, scope, quality and effect of the foreign order",* but with regard to and in the context of the interests of the Respondent Trustee and the beneficiaries of the

© Royal Court of Guernsey

Trusts, including the Appellant. We accept, as we believe the learned judge must also have accepted, that the balancing exercise to be performed by the Court is not merely a crude balancing of the particular interests of the parties appearing before it, but there must be some consideration of the order compelling disclosure and regard had for the broader public interest.

**<u>Grounds of Appeal</u>**

43. The Notice of Appeal identifies 4 Grounds of Appeal, but they can conveniently be divided into 2 broad headings:

1) The learned judge failed to carry out the balancing act required in accordance with the judgment of Leggatt J in *Re A New York Bank* [1983] E.C.C. 342, and thereby misdirected himself;
2) In so far as the learned judge did carry out that balancing exercise he arrived at a conclusion which was plainly wrong.

**<u>The competing arguments</u>**

44. Advocate Laws for the Appellant submits, under the first ground of appeal, that Judge Finch erred in law by failing to give due regard to the public interest in maintaining the preservation of banking (or in this case, trust) confidence, he failed to consider the content and effect of the French Court's order, and he should have considered the actual harm likely to be suffered by the Respondent.

45. If Judge Finch had taken that, correct, approach the Appellant submits that he would have concluded:

1) The French Judge could, and should, have sought to obtain the information he required though the mutual assistance route in Guernsey, including applications under Section 4 of the 2001 Law to obtain evidence in connection with an overseas criminal investigation, Section 1 of the Criminal Justice (Fraud Investigation) (Bailiwick of Guernsey) Law, 1991 to investigate a person's affairs where there are reasonable grounds to suspect an offence involving serious or complex fraud, wherever committed; or Section 45 of the Criminal Justice (Proceeds of Crime) (Bailiwick of Guernsey) Law, 1999 to obtain an order requiring the production of particular material or material of a particular description.

2) The French Judge deliberately circumvented the protections in the 1959 Treaty and the statutes, which would all require evidence of reasonable grounds for the suspicion

© Royal Court of Guernsey

of an offence (and here there is no evidence at all of any criminal conduct by the Respondent, and both experts are firmly of the view that on the information in the Summons, and on the further information available to them, there is absolutely no basis to believe that the Respondent has committed the serious offences it is alleged to have committed).

3) The French Judge issued the Summons with "the real intention … to obtain information and documents in relation to the Trusts to pursue other persons that he is presently in the process of investigating (namely, certain members of the Settlor's family)".

4) If and in so far as there is a risk of harm to the Respondent (and particularly to X) "(a) by permitting the Respondent to attend before [the French Judge], the Court would implicitly be encouraging the disregard of the relevant mutual assistance treaties and legislation in favour of the use of bullying tactics to obtain information without the operation of the ordinary safeguards" and (b) any harm is unlikely to be ameliorated by attending.

5) Disclosure by the Respondent to the examining magistrate would cause real harm to the Appellant, and other beneficiaries, including but not limited to the risk of seizure of trust assets, and risk of access to the information and consequential attack by the heirs of Settlor's widow or Settlor's son's widow.

46. Advocate Clark for the Respondent defends the decision of Judge Finch, and submits:

1) The French Judge was well aware of the Mutual Assistance route, but is not seeking to examine the Respondent as witness, but as a person under suspicion of serious crime.

2) There is no evidence that the French Judge is exercising his powers in bad faith or for an improper purpose.

3) It is the Respondent's case that if it is able to demonstrate what it has done and what it has not done the French Judge must appreciate that the Respondent should not, properly, be charged with the offences identified in the Summons. Absent being able to demonstrate that fact, the Respondent risks being charged and subsequently prosecuted and potentially convicted of serious offences that it does not believe that it

has committed and which it believes it can demonstrate relatively easily that it has not committed.

4) It is manifestly in the interests of the Trust that the allegations raised by the French Judge are clarified.

5) The offences for which the Respondent is under investigation go to the very heart of its integrity as a financial institution and will seriously prejudice the Respondent's reputation and that of its parent company which has been hard won over a great many years.

6) The Appellant has still produced scant information regarding the prejudice that would be occasioned to her and her fellow beneficiaries if the Respondent was able to defend itself as it saw fit despite having had plenty of time in which to do so. In contrast, there is clear evidence before the Court that there is a real risk of prejudice and harm to the Respondent, and to X in particular.

7) There is no evidence before the Court to demonstrate that the order of the French Court is abusive.

8) The reputation of Guernsey as a well regulated and cooperative jurisdiction is at risk for as long as there is an Order preventing the Respondent from cooperating with the law enforcement authorities in France in their investigation as to whether or not the Respondent has committed serious criminal acts. The Respondent has nothing to hide regarding its own conduct but can only demonstrate that by disclosing information regarding the Trusts.

**Discussion**

47. We are informed that neither Guernsey nor English counsel for the Respondent, nor Guernsey counsel for the Appellant, are aware of any authority in which there is specific discussion of the use which a trustee may make of trust documents and information to protect itself against criminal charges.

48. As already noted we accept that a trustee, such as the Respondent, is under a duty of confidentiality to the beneficiaries of the trust. This is a "general proposition" to which there are exceptions. We are also satisfied, and this appears to be common ground, that such an exception would arise where a trustee demonstrates that it is at risk of real harm, or substantial prejudice, if it does not make disclosure, and thereby breach its duty of confidentiality. This conclusion is supported by various decisions to which we have been

referred, in particular *Tournier* and the fourth qualification to the contractual duty of secrecy implied in the relation of banker and customer, namely "where the interests of the bank require disclosure".

49.    The essential issues in this case, picking up the various grounds of appeal, and the arguments listed above, are:

(1)   Has the Respondent shown that its interests require disclosure in the circumstances of this case? ("Prejudice to the Respondent")

(2)   Has the Appellant shown that there will be prejudice to her, and to the other beneficiaries of the Trusts, if the Respondent attends court in Paris and answers questions, thereby disclosing information about the Trusts and, in particular, information disclosing the existence of assets in France, and elsewhere? ("Prejudice to the Appellant")

(3)   Is there evidence upon which we can reasonably conclude that the French Judge  has acted in such a way as to cause this Court not to give due respect to his order/summons? ("The Summons")

(4)   When carrying out the balancing exercise described by Leggatt J in *In re a New York Bank* do we agree or disagree with Judge Finch that the application to restrain the Respondent should be dismissed? ("The Balancing Exercise")

50.    We now turn to address these issues, using the abbreviated headings.

*Prejudice to the Respondent*

51.    It is common ground that, on the basis of the facts available to each of them, the Appellant's and the Respondent's experts are of the opinion that there can be no basis for criminal liability attaching to the Respondent.  The Appellant's expert  says this:

> *"20. Based on this information, and in light of the constitutive elements pertaining to the various crimes described above… it is my opinion that no criminal liability can attach to* [the Respondent]. *Further, based on the information provided to me (i.e. the assumptions set forth above and in the Letter of Instruction), it is my opinion that there are insufficient grounds for liability to attach to any other person."*

The Respondent's expert says:

> *"32. I have been provided with a draft of the as yet unsworn second affidavit of* [X] *and have also discussed with the Respondent its activity as Trustee of the Trust since 2007.*
>
> *33. I am advised that since 2007 there have only been loans made from the* [First Trust] *to meet the liabilities of the* [Second Trust]*– principally the Trustee's own costs – due to insufficient liquidity within the* [Second Trust]. *I am advised that the Respondent regards these as fully enforceable loans.*
>
> *34. Based on this information, I share the opinion expressed by [the Appellant's expert] that no criminal liability can attach to the Respondent which is why it is so important that the Respondent is able to give a full account of all that it has done and not done as a trustee of the Trusts.*

*42. According to the factual information I was provided by Carey Olsen and by the Respondent, I have absolutely no reason to believe that the Respondent has committed any of the very serious offences mentioned in the Summons. This is precisely why I maintain that it is essential that the Respondent should be given the opportunity to defend itself as soon as possible by providing* [the French Judge] *with any information to demonstrate that his concerns are ill-founded. Until the Respondent is permitted to do so the Respondent (and possibly some of its officers and employees at a later stage) run the risk of being charged and subsequently prosecuted before French criminal courts. "*

52. There is no agreement between the two experts as to the risk that the Respondent will be charged with the criminal offences referred to in the Summons. The Appellant's expert does not address this issue, but the Respondent's expert expresses the following firm views, in addition to those set out above:

*"22. ... If the Respondent is no longer prohibited from disclosing information relating to the Trusts in defending itself from the allegations made by the Judge in connection with the charges and the offences mentioned in the Summons, it is manifestly the case that the Respondent is less likely to be charged. I accept that the Respondent may be charged regardless of what it does but its best chance of not being charged is to give a very full account of all that it has done and not done as trustees of the Trusts.*

*"35. If the Respondent is prevented from disclosing such information to the investigating magistrate and more generally to answer his questions, as indicated above, the Respondent runs the very clear risk of being charged with criminal offences mentioned in the Summons."*

We put these paragraphs to Advocate Laws, for the Appellant, and his response was to accept that he was not in a position to challenge these statements but, he emphasised, attending before the investigating magistrate could not guarantee that the Respondent would not be charged.

53. Whether, in the opinion of the two experts and on the basis of information they have received, criminal liability can attach to the Respondent is not of particular significance. What is of importance is that the investigating magistrate in Paris (who may, or may not, have access to the same information) appears to have formed the view (and there is no material before the Court to suggest that this is anything other than an honest view) that suspicion of serious criminal offences requires the Respondent to appear before him to answer questions. In paragraphs 108 to 126 of her Second Affidavit X describes the events since the hearing in Paris on 16th March 2012, and her account has not been contradicted by the Appellant. These paragraphs clearly show that the French Judge continues to have "suspicion of wrongdoing on the part of the Respondent", and on 6th April 2012 the French Judge is reported as saying that as a result of the Respondent failing to provide information he proposed "to issue an arrest warrant against [X] personally as legal representative of the Respondent". On 15th May 2012 the Respondent received information that in April 2012 an order had been made in Paris designating a *mandataire ad hoc* "in order to represent the Respondent in the course of the

investigation conducted by [the French Judge]". In an earlier paragraph of her Affidavit X notes the advice the Respondent has received that "the appointment of such a Mandataire would expose the Respondent to a strong possibility of being charged and thereby denied of its right to defend itself adequately or at all". Finally, on 25th April 2012, X learned that the French Judge had arrested one of the lawyers previously engaged by a member of the Settlor's family who had been charged ("mis en examen") with money laundering ("blanchiment aggravé de fraude fiscale"). He was said to be contesting a €750,000 bail set as a condition of his release.

54. We are satisfied that, notwithstanding the views of the eminent experts in French law as to liability, it is likely that the investigating magistrate continues to suspect the Respondent of involvement in criminal activity.

55. In her second affidavit, X describes in some detail the personal prejudice she has been suffering as a result of the risk of arrest including the need to cancel family holidays and also suffer a more general restriction on travel necessary in order to discharge her responsibilities as a director of the Respondent. X also addresses the prejudice being suffered on a continuing basis by the Respondent:

> *"The Respondent is part of a global banking and wealth management business that has been in business for* [many] *years. …"Integrity" is not just a cliché within our business. It is taken very seriously. We risk being prosecuted for serious criminal offences which go to the heart of the Respondent's standing and reputation. …If the Respondent is charged with serious crimes which by their very nature involve dishonesty and criminal intent the reputation of the Respondent and its parent companies, which it holds in very high esteem, will be grievously damaged. Client confidence, which is essential to any business which has, at its core, a relationship of trust will, inevitably, be shaken."*

56. On the basis of the uncontradicted factual evidence presented to this court by the Respondent, and the expert evidence of the Respondent's expert, we have no hesitation in concluding that there has been, and continues to be, serious prejudice to the Respondent if it is unable to attend before the French Judge and seek to allay his suspicions of criminal wrongdoing.

*"Prejudice to the Appellant"*

57. We also accept that there is a risk to the Appellant, and therefore to the other Beneficiaries of the Trusts, that if the Respondent were to appear before the French Judge and answer his questions, information would be disclosed which would otherwise remain confidential. We accept that the mere disclosure of confidential information can be detrimental. The particular claimed prejudice falls into the following categories:

57.1 *Dissemination of information* - according to the Respondent's expert it is likely that the criminal investigation in France was instigated as a result of the complaint by the Settlor's widow (referred to above) and also by the French Revenue. It is therefore possible, perhaps

likely, that information disclosed to the Investigating Magistrate (whether or not such information can lawfully be disclosed) will find its way into the hands of the heirs of the Settlor's widow and/or the French Revenue. The Appellant is concerned therefore that a mass of information, which would otherwise remain confidential, could be released if the Respondent answered questions and/or provided documents.

57.2 *Risk of seizure of Trust assets* – based on the risk of information being passed on to the French tax authorities, as accepted above, there is a consequential risk that action will be taken in relation to the trust property. The Appellant's expert in French tax law, informed the Court in his affidavit sworn on 10th May 2012:

> *"42. In this context, should any information on the Trusts be provided to the FTA – where even the beneficiaries do not have such information – the FTA are likely to use various means (e.g. seizures of immovable assets, seizures of bank accounts, etc) to preserve what they assume to be their rights, which would be very difficult for the taxpayers or the beneficiaries of the Trusts to oppose, and notwithstanding our view that the 2011 Tax Reassessment Notice is not enforceable…*
>
> *43. More generally, since the FTA seem to consider that the assets held by the Trusts 'belong' to* [the Settlor's] *estate, they could try to implement protective measures on the assets held by the Trusts, which would hamper their profitability and reduce their market value.*
>
> *44. This could prove harmful to all the beneficiaries of the Trusts, among whom those that are not targeted by the FTA in the context of the 2011 Tax Proceedings, like the Applicant."*

The Respondent's expert on French tax law, does not appear to disagree with this view.

57.3 *Risk of further civil proceedings* - also arising from the risk of dissemination of information is the concern that the heirs of the Settlor's widow, or his son's widow, will pursue new civil claims against the Trusts and the beneficiaries (even if without merit) which will lead to further expenses being incurred in defending such claims.

*"The Summons"*

58. The Appellant submits that the French Judge should have used alternative, proper, means in order to seek to obtain the information he required - see paragraph 45 above for details of this complaint.

59. In summary, the Appellant submits that the investigating magistrate deliberately circumvented the safeguards contained in the mutual assistance provisions "because he would not have been able to satisfy the Guernsey authorities that reasonable grounds exist for the suspicion of an offence". The Appellant invites us to infer that the real intention behind the issuing of the Summons was to obtain information and documents in relation to the Trusts in order to pursue, not the Respondent, but other persons who are presently in the process of being investigated, namely various members of the Settlor's family. The Appellant's French expert provides some support for this submission, relying on Article 3-6, 7-12 and 14 of the 1959

Treaty. His conclusion is "that the French Judge has here misused the procedures available to him to obtain evidence in connection with his ongoing investigation. In so doing, he has disrespected International Cooperation channels that are likely well known to him."

He continues:

> *"26. As a criminal lawyer practising for a long time, I am very surprised by the French Judge's lack of respect for the international treaties and laws relating to Mutual Assistance in Criminal Matters, unless he did so to avoid revealing facts about the case that he would have had to provide to the Guernsey authorities had he respected the laws governing international cooperation.*
>
> *34. It is clear to me that the French Judge has not respected laws governing international cooperation. This course is so surprising to me that it is my opinion that he may be using the Summons to circumvent the requirement to establish, to the satisfaction of the Guernsey authorities, that he had reasonable grounds to suspect* [the Respondent] *of the commission of an offence (as would have been required by the 1959 treaty).*
>
> *35. It is my belief that the French Judge is seeking to obtain documents relating to the Trust but that he has used the Summons to improperly obtain evidence from* [the Respondent] *by naming them as a target and then issuing a Summons for them to appear before him."*

60. Based on this evidence, the Appellant invites this court to conclude that the Summons was an attempt by the investigating magistrate to circumvent the proper safeguards and extort information from the Respondent with the threat of criminal proceedings.

61. The difficulty we have with this submission is that the main provisions of the 1959 Treaty, upon which reliance is placed, are confined to requests from one State to another where the requesting party requires witnesses or experts to give evidence (whether or not producing records or documents) and "a witness or expert, whatever his nationality, appearing on a summons before the judicial authority of the requesting Party shall not be prosecuted or detained or subjected to any other restriction on his personal liberty in the territory of that Party in respect of facts or convictions anterior to his departure from the territory of the requested Party." (see Article 12(1)). From the text of the Summons it is clear that the French Judge is treating the Respondent, not as a witness, but as a "prosecuted person" (for the purposes of the 1959 Treaty), in which case it is Article 7(1) that applies:

> "The requested Party shall effect service of writs and records of judicial verdicts which are transmitted to it for this purpose by the requesting Party. Service may be effected by simple transmission of the rateable record to the person to be served. If the requesting Party expressly so request, service shall be effected by the requested Party in the manner provided for the service of analogous documents under its own law or in a special manner consistent with such law."

62. This provision was drawn to the attention of the French Judge's office by letter dated 24th February 2012 and, as noted above, the Summons was duly served in March 2012 in accordance with the requirements of the 1959 Treaty and the 2001 Law.

63. It is noteworthy that the highest the Appellant's French expert puts his case is that, because of his strong opinion that the French Judge should have used the mutual assistance provisions to obtain the evidence, he considers that the Judge may be using the summons to circumvent the requirement to establish, to the satisfaction of the Guernsey authorities, that there are reasonable grounds to suspect the Respondent of the offences in question.

64. For the reasons we have given, it seems to us that it was open to the Judge to proceed by the alternative route of issuing a summons and arranging for that summons to be validly served in Guernsey. In our judgment, there is no evidence before us which would enable us to find that the Judge was acting other than in good faith. On the basis of the evidence before us, he appears to have been exercising a jurisdiction available to him under French law and has not acted contrary to the 1959 Treaty. In the circumstances we are unable to accept the Appellant's contention that the Judge acted so as deliberately to circumvent the protections in 1959 Treaty, or with any intention which is different from that expressed on the face of the Summons.

65. We are fortified in these conclusions by the acknowledgment by Advocate Raffray summarised above. In light of the service of the Summons on the Respondent by the French Judge, the Procureur entered into lengthy correspondence with the Judge. Mr Raffray emphasised that at no stage during the process did the Procureur have any cause to fear that the method of securing the presence of the Respondent (or X) adopted by the French Judge was in any way untoward, still less that he was seeking to manipulate the processes of the Guernsey court for some discreditable or ulterior purpose to secure the attendance of the Trustee in the person of X before his court.

*"The Balancing Exercise"*

66. We are prepared to proceed on the basis that the balancing exercise to be undertaken "must involve an evaluation of the *nature, scope, quality and effect* of the relevant order of the foreign court" (taken from paragraph 51 of the judgment of Leggatt J in *Re A New York Bank*), but we also accept that it will require a balancing of the individual interests of the two parties.

67. We have considered the French Judge's summons (the "relevant order of the foreign court") with care, and in particular the submission that the investigating magistrate has used his powers for the improper purpose and in order to avoid complying with the requirements of the 1959 Treaty. For the reasons given, we do not find this to be the case. If there were to be evidence that a foreign criminal investigation was being carried on in bad faith the court might well take a different approach.

68. We turn now to the balancing of the individual interests of the Respondent and the Appellant, including the interests of the unrepresented beneficiaries of the Trusts. We accept that there is likely to be some detriment if otherwise confidential trust information is disclosed in the course of the French proceedings. We reach this view notwithstanding that what may or may not happen in the court in Paris cannot accurately be predicted, and the Respondent's application is broadly framed to allow it to disclose information "as the Respondent reasonably considers necessary or desirable to protect the interests of the beneficiaries of the Trust, to secure the preservation of the trust property or to protect the interests of the Respondent personally ".

69. We are satisfied, as noted above, that the Respondent is at real risk of identifiable harm if it fails to attend before the investigating magistrate and provide at least some information to try and remove the suspicion that it is guilty of the serious offences referred to in the Summons.

70. Notwithstanding the fact that we have been provided with a great deal more evidence than that placed before Judge Finch we reach essentially the same conclusion on this aspect of the appeal namely that, on the facts of this case, the potential injustice to the Respondent “here trumps other considerations" such that the balance falls firmly on the side of dismissing the appeal and granting the application by the Respondent dated 13th March 2012 – see paragraph 12 of Judge Finch’s judgment:

> “The more general question is considering the various beneficiaries’ rights to privacy in relation to their financial affairs, which is a serious consideration and the rights of the Respondent. The Respondent has, brusquely and at short notice, been summoned as a prospective criminal defendant on serious charges. In response it is intended, as I understand it, to demonstrate that they have acted simply in accordance with the normal rules and duties pertaining to trustees. I consider that attending and then refusing to provide the information sought is, on the expert evidence I have accepted, likely to lead to potentially deleterious criminal consequences for the Respondent. The effects of even a charge against such an institution would be, at least, unfortunate. Justice requires on these facts that the application fails. The potential injustice to the Respondent here trumps other considerations.”

**Conclusion**

71. The facts of this case serve to remind trustees and beneficiaries that there are limits to the obligation on trustees to keep the affairs of the trust confidential. One of those limits is the ability of the trustee to protect its own interests in circumstances where silence in response to a court order, or summons (whether issued in this jurisdiction or abroad), would be likely to expose the trustee to a real risk of serious harm. A trustee in such circumstances cannot be expected to refuse to answer questions in a court of law, and simply suffer the consequences.

72. In the last analysis, on the facts of this case and bearing in mind the jurisdictions involved, the result of a decision to reject the judgment of the Royal Court would be to deny the Trustee and X (as its representative) the opportunity, which they wish to make use of, to defend

© Royal Court of Guernsey

themselves against serious criminal allegations. To prevent them from availing themselves of that opportunity might result in charges being preferred against them and convictions being recorded in their absence. It is not for this Court to make any assessment of their chances of success in persuading the French Judge of the falsity of the allegations made against them. But, granted X's wish to take the opportunity on her own behalf and that of the Trustee, it would be plainly wrong for this Court to inhibit it. In weighing the principle of confidentiality to which the beneficiaries are entitled and the principle that no court should connive at possible injustice, it is plain where the balance lies. This appeal must be dismissed.

73. It follows that the Order made by Judge Finch, on the cross-application, remains, but by the agreement of the parties there is a small amendment replacing the word "desirable" with "prudent" so that it reads:

> *"The Respondent and/or its employees, representatives, agents, officers or directors be at liberty to disclose any information of whatever nature, whether orally, or in written form, or any document, relating to the Trusts to the law enforcement authorities of the Republic of France, as the Respondent reasonably considers necessary or prudent to protect the interests of the beneficiaries of the Trust, to secure the preservation of the trust property or to protect the interests of the Respondent personally in the context of an on-going criminal investigation in that country apparently commenced pursuant to charges brought by a French Prosecutor dated […]and including but not limited to a summons dated 5 January 2012 issued to the Respondent by* [the French Judge]*which requires the Respondent to appear in the District Court of Paris on 16 March 2012 for an oral examination."*

74. Notwithstanding that these proceedings have been heard *in camera*, we grant permission at the request of the Respondent for a copy of the Order set out above to be provided to the French Judge.

© Royal Court of Guernsey