# EXHIBIT D

| Date | From | To | Excerpt of Email | GX |
|---|---|---|---|---|
| 12/03/2012 | Butselaar | Howitt | "Although we think (we=Alexander, Ron and Stan) that the existing structure can defend itself against attacks from the IRS. Alexander and I came to the conclusion that it might be wise to change the top structure a little. The IRS might argue that Tijs, who is appointed as one of the beneficiaries, can control Safe From Harm Trust in an indirect manner. Alexander and I suggest that the existing Trust sets up a new Trust (Settlor) and that the new Trust will buy the shares of Safe From Harm Limited. In the new Trust Tijs will not be mentioned as a beneficiary, however, we think that this can be changed at the moment Tijs is no longer considered a US tax resident." | G-86 |
| 12/04/2012 | Butselaar | Sealey | "I had a pleasant call with Thomas yesterday. We started about the Calvin Harris structure . . . . My structure, which I use for Tiesto and Afrojack, is different. The European structure . . . is owned by a Trust. When the artist spends too many days in the US, we take him out of the Trust and bring him back as soon as he finishes his US tax obligation." | G-88 |
| 11/28/2014 | Butselaar | Strokous | "Let us first go back to the main question that is 'can we prevent US taxation on your non-US income'? The answer to that question is 'yes'. At first, I advised you to set up a Cypriot company and give you all shares that are entitled to economic rights (dividend) and give someone else 60% of the voting shares of the same company. As you may know from other clients, I generally use Loizos Kountouris for this service. Loizos is also well known by Stanley. Due to the wording of the US law we can also use siblings, in your case your sister. When we talked about setting up the structure in Paris, you told me that you would prefer to use your sister instead of Loizos. Please note Elena will not receive any income from the Cypriot company, since the company will not pay a dividend to her." | A-193 |
| 10/06/2015 | Butselaar | Strijd | "For US tax reasons the main question will be who the shareholder is of this Cypriot company. If you own the shares of this company, the IRS will ignore the company and tax you personally as if the company does not exist. Should that happen, then we have created a useless structure. The transparency of the company can be prevented if you would not hold more voting shares in the company than 39%. This means that 61% of the voting shares must be held by someone/something else. Unfortunately, husbands and parents do not qualify. Brothers and sisters do. If the 61% of the voting shares are held by a non-US trusted representative (brother or sister or a third party), the transparency will be stopped. Please take into account that the voting shares will only give power over the dismissal and appointment of directors, the annual accounts and dividend payments, which of course will only flow to you, being the 100% economic owner." | B-216 |
| 04/01/2016 | Butselaar | van Santen | "DJs tend to stay (too) long in the United States . . . As you probably know, the US applies the so-called 183-day rule. If, as a performer, you spend less than 183 days [in the US], the main rule, being that you are only taxed on the income earned from performances in the US, shall apply. If, as a performer, you spend more than 183 days, then the special rule, *i.e.* having to pay taxes on your worldwide income, shall apply. The issue with the latter is that the US tax authorities not only look at the income Nick receives in the form of a salary or dividend, but also at the companies controlled by him and which only receive passive income. You are aware that royalties qualify as passive income. A large portion of a performer's income is composed of royalties, so in order to avoid transparency of the whole European structure, the shares of Globetrotter Ltd are placed in a Trust. The Trust makes sure that the IRS cannot claim that Nick has 'full control' over the non-US activities." | A-349T |
| <u>Glenn Frank Testimony</u><br>Q: So based on your in[ter]actions with Mr. Butselaar over the years and including what was discussed on that call, how did Mr. Butselaar present his level of understanding of the US tax laws?<br>A: He seemed to have a good understanding of US tax laws.<br>Q: Did he ever tell you that he did not understand the US tax laws?<br>A: No.<br>. . . .<br>Q: Did he ever tell you that he needed to consult with other people to understand the US tax laws?<br>A: No. | | | | Trial Tr. 881:11–23 |